THE GREEN BAY & MISSISSIPPI CANAL COMPANY vs. HEWITT, JR., and others.

*September 27, 1884 — March 3, 1885.*

*(1) Ejectment: New trial: Amendment of answer: Inconsistent counter-claim: Estoppel. (2) Equity: Mistake of law or fact: Reformation of deed.*

1. Defendants in ejectment, upon the theory that the deed under which plaintiff claimed conveyed by its terms an undivided one-half only of the premises, and that they themselves had acquired the other undivided one-half by a subsequent deed from the same grantor, pleaded merely a general denial. The court construed plaintiff's deed as conveying the whole of the premises (see 55 Wis. 96). A judgment accordingly in favor of the plaintiff was vacated and a new trial granted under the statute (sec. 3092, R. S.), and the defendants amended their answer by setting up an equitable counterclaim for the reformation of plaintiff's deed so as to make it conform to the intention of the parties appearing on its face and convey an undivided one-half of the land only. *Held*, that the counterclaim was not inconsistent with the previous general denial, and that the former trial and judgment did not estop the defendants to set up such counterclaim.

2. The absolute owner of land conveyed it by a deed which, after granting all his estate in the land, declared in a subsequent clause that the interest and title intended to be conveyed was only that acquired by virtue of a certain sheriff's deed, which was in fact an undivided one-half only. All parties to the conveyance intended that it should embrace such undivided one-half only, and supposed that the deed was so drawn as to effectuate such intention. *Held*, that, although the limitation of the grant was ineffectual because inserted *after* and not *in* the granting clause, yet, the intention of the parties being clear, the mistake might be corrected by the reformation of the deed to accord with that intention.

The Green Bay & Mississippi Canal Co. vs. Hewitt, Jr., and others.

APPEAL from the Circuit Court for *Outagamie* County.

Ejectment. The cause was before this court on a former appeal and is reported in 55 Wis. 96. The judgment affirmed on that appeal was vacated and a new trial granted under the statute (sec. 3092, R. S.). The defendants then amended their answer so as to set up a counterclaim for the reformation of the deed under which the plaintiff claimed, to accord with the alleged intention of all parties thereto. Upon the issue made by the reply to that counterclaim, the circuit court found as facts:

1. On and previous to December 12, 1851, George W. Lawe was the owner in fee of all that part of private claim No. 1, at Kaukauna, Outagamie county, Wisconsin, lying on the easterly side of the canal, and on that day George W. Lawe and his wife conveyed to Morgan L. Martin by warranty deed an undivided one-half of the land, reserving the buildings and improvements, and the saw-mill and the improvements therewith. The consideration expressed in this deed was one dollar, but Mr. Martin paid no money or other valuable consideration for the land, excepting that he then and there executed and delivered to Lawe a bond in the penal sum of $10,000, conditioned to become void if Martin, his heirs, etc., constructed and finished a canal across the land of said Lawe at Kaukauna according to his contract with the state, of suitable dimensions to use the surplus water, not required for navigation, for hydraulic purposes, the canal not to be less than one hundred feet in width, to be secured according to the plans of the state engineer; and also construct in the lower embankment of the canal a sufficient number of bulkheads to make use of the surplus water for hydraulic purposes, and indemnify and save harmless the said Lawe against any claim that the state of Wisconsin might set up in consequence of the use of said surplus water for hydraulic purposes by said Lawe or those claiming under him.

2. At the time of the date of this deed and bond, Morgan L. Martin was under contract with the state to build the whole line of improvement on Fox river from Green Bay to Lake Winnebago, and thereunder did build the canal through the said lands of George W. Lawe, but did no other work at that point than he was required to do by his contract with the state, and for which he was paid by the state.

3. On the 10th day of September, 1852, George W. Lawe and his wife conveyed the other undivided one-half of said land to M. J. Mead. On the 30th of September, 1852, M. J. Mead quitclaimed back to said George W. Lawe the saw-mill and fixtures and the ground on which the same were situated, with the water power and mill privileges necessary to the proper use of the said premises as a saw-mill, with the appurtenances thereto belonging, being a part of the premises deeded to him by Lawe and wife by the deed of September 10, 1852.

4. On August 14, 1855, M. J. Mead conveyed by warranty deed to the Fox and Wisconsin Improvement Company, the other undivided one-half of the land, one undivided one-half of which was conveyed to Morgan L. Martin by George W. Lawe and wife by the deed of December 12, 1851, together with all the hydraulic privileges secured to George W. Lawe by a bond executed by M. L. Martin, which bond was by this deed declared canceled, and this deed being therein declared subject to one theretofore executed to said Martin by said Lawe of a portion of the premises. And on the 28th day of August, 1855, George W. Lawe and wife, by a quit-claim deed, conveyed to the Fox and Wisconsin Improvement Company the land described in the deed from M. J. Mead to the company by the deed of August 14, 1855, also subject to a deed theretofore given by them to Morgan L. Martin.

5. In April, 1866, Morgan L. Martin had a judgment in the circuit court of Brown county against the Fox & Wisconsin Improvement Company, and issued an execution

thereon to the sheriff of Outagamie county, who levied upon and sold to Morgan L. Martin a number of tracts of land as the property of said company, and among others a piece of land commencing at a point at the upper or western extremity of the canal at Kaukauna, and twenty feet north of the northerly water line of the canal, running thence down and along the bank of said canal and twenty feet distant from the water line as aforesaid to the northerly line of the south half of private claim No. 1, lately owned by George W. Lawe; thence following said northerly line of the south half of lot No. 1 aforesaid, easterly to Fox river at low water mark, thence up stream along the margin of Fox river to the upper extremity of the guard lock at the head of the canal; thence northerly to the place of beginning, including all the land sold to Martin by Lawe by the deed of December 12, 1851, and by Lawe to Mead by the deed of September 10, 1852, and by Mead and Lawe to the Fox and Wisconsin Improvement Company, and also the right of way of the canal at that point. And on the 23d day of December, 1871, A. B. Evarts, then sheriff of Outagamie county, executed a conveyance of said premises with the other premises sold at sheriff's sale as aforesaid, to said Morgan L. Martin.

6. Under the circumstances attending the conveyance to Morgan L. Martin by George W. Lawe and wife of the date of December 12, 1851, the state of Wisconsin was in equity entitled to have a conveyance from said Martin of the lands described in that deed, and, previous to the time of the levy of said execution above referred to, that right of the state of Wisconsin had passed to the Fox & Wisconsin Improvement Company by virtue of acts of the legislature and proceedings had thereunder, and was then held and owned by said company.

7. Previous to February 22, 1873, negotiations were entered into by the plaintiff and Morgan L. Martin for the

purchase by the plaintiff of the interest acquired by said Martin in lands formerly owned by the Fox and Wisconsin Improvement Company by the sheriff's sale and deed above referred to. In the negotiations nothing was said about, and no reference was made to, the purchase by the plaintiff of any interest in the lands in dispute acquired by said Martin by the deed from George W. Lawe of December 12, 1851, or of any other interest in said lands, or in any lands conveyed to said Martin by said sheriff's deed, except for the purchase of the interest acquired by said Martin by said sheriff's sale and deed. These negotiations resulted in the execution by said Morgan L. Martin and his wife, of his deed to the plaintiff, bearing date February 22, 1873, by which he conveyed to the plaintiff the whole of that part of the south half of private claim No. 1 lying on the easterly side of the canal at Kaukauna aforesaid, including the whole of the lands in controversy in this action, by metes and bounds.

8. At the time of the execution of this deed to the plaintiff of February 22, 1873, it was the opinion of Morgan L. Martin that he only acquired an undivided one-half of said land by the sheriff's deed, and that his said deed to the plaintiff only conveyed to the plaintiff an undivided one-half of said land, to wit, the undivided one-half thereof conveyed by George W. Lawe and wife to Mead (and wife) and Lawe and wife to the Fox and Wisconsin Improvement Company. And it was not his intention to convey to the plaintiff the one undivided one-half of said land conveyed to him by George W. Lawe and wife by the deed of December 12, 1851, but on the contrary, it was his intention not to convey that interest to the plaintiff but to retain the same to himself.

9. That the mistake of Morgan L. Martin was a mistake of law, to wit, a mistake as to the true construction of his deed, and not a mistake of fact.

10. But if the mistake was one of fact, instead of law,

The Green Bay & Mississippi Canal Co. vs. Hewitt, Jr., and others.

inasmuch as the conveyance of Morgan L. Martin placed the legal title to the property and the whole of it where it belonged in equity, the deed by which this was effected should not be reformed by a court of equity.

11. By the sheriff's sale and deed, Morgan L. Martin did acquire an interest in the whole property, to wit, the legal title to the undivided half thereof that was conveyed to Mead by Lawe and wife, and by Mead and Lawe and their wives to the Fox and Wisconsin Improvement Company, and the equity of the state to which that company had succeeded to have a conveyance from said Martin of that undivided one-half thereof that was conveyed to Martin by Lawe and wife by the deed of December 12, 1851.

As conclusions of law the court found that the defendants were not entitled to a reformation of the deed nor to any other relief under the counterclaim, and that such counterclaim should be dismissed.

Upon the issue made by the denials contained in the answer, the court found that the plaintiff was the owner of the premises in question and entitled to the possession thereof; that the defendants unlawfully withheld the possession; and that the plaintiff had been damaged thereby to the amount of six cents. Judgment was accordingly entered in favor of the plaintiff, and the defendants appealed.

*David S. Ordway*, attorney, and *Wm. P. Lynde*, of counsel, for the appellants, to the point that the mistake in the deed might be corrected, cited *James v. Cutler*, 54 Wis. 178, and cases cited by the court; *Pitcher v. Hennessey*, 48 N. Y. 416, 423–4; *Fuchs v. Treat*, 41 Wis. 404; *Maher v. Hibernia Ins. Co.* 67 N. Y. 283; *Taylor v. Holmes*, 14 Fed. Rep. 498; *Snell v. Ins. Co.* 98 U. S. 90; *Stafford v. Fetters*, 55 Iowa, 484; *Tabor v. Mich. Mut. L. Ins. Co.* 44 Mich. 330; *Sampson v. Mudge*, 13 Fed. Rep. 260.

*Moses Hooper*, for the respondent, contended, *inter alia:*
1. The defendants are estopped from setting up the counter-

claim for reformation of the deed. *Allegans contraria non est audiendus.* When a party has an election between inconsistent remedies, he is confined to that which he first chooses. *Webster v. Phœnix Ins. Co.* 36 Wis. 67; *Ramsdale v. Foote,* 55 id. 557; *Sanger v. Wood,* 3 Johns. Ch. 422; *Bowen v. Mandeville,* 95 N. Y. 239, 240; *Rodermund v. Clark,* 46 id. 354; *Lilley v. Adams,* 108 Mass. 50; *Littlefield v. Brown,* 1 Wend. 405; *Rapalee v. Stewart,* 27 N. Y. 310; Herman on Estoppel, 462, 465. When the defendants were called upon to answer the plaintiff's claim of title, two courses were open. They could stand upon the deed of February 22, 1873, and their interpretation thereof, or could assert that such deed was invalid because not according to the contract of the parties, and ask specific performance of the contract according to their view thereof. They deliberately chose the former course, asserting the deed as the true contract of the parties; and they cannot now change their ground and repudiate the deed. *Sibert v. McAvoy,* 15 Ill. 109; *Rufner v. McConnell,* 14 id. 168; *Steinbach v. Relief F. Ins. Co.* 77 N. Y. 502; *Washburn v. Great Western Ins. Co.* 114 Mass. 175; *McNaughten v. Partridge,* 11 Ohio, 235; *Martin v. Ives,* 17 Serg. & R. 364; *Baily v. Baily,* 44 Pa. St. 274; *Ullery v. Clark,* 18 id. 148; 2 Wash. (Va.), 258, 270, 275; *Le Guen v. Gouverneur,* 1 Johns. Cas. 436, 502; *Penn v. Reynolds,* 23 Grat. (Va.), 518. 2. If there was any mistake in the deed, it was a mistake of law, and not a mistake of fact. The authorities are abundant that a mistake of law cannot be corrected. *Durant v. Bacot,* 13 N. J. Eq. 201; *Burt v. Wilson,* 28 Cal. 632; *Barnes v. Bartlett,* 47 Ind. 98; *Toops v. Snyder,* 70 id. 554; *Easter v. Severin,* 78 id. 540; *Williamson v. Hitner,* 79 id. 233; *Neff v. Rains,* 33 Wis. 689; *Snell v. Ins. Co.* 98 U. S. 85; *Kenyon v. Welty,* 20 Cal. 637; 2 Pomeroy's Eq. Jur. sec. 842; 1 Story's Eq. Jur. sec. 111. But that rule enforced without exception would seem to produce hardship in some cases. A middle ground is

being built up. It is that where there is a complete precedent contract or agreement not executed — not correctly expressed in the written agreement — a court of equity will decree a specific performance of the precedent contract. This, for convenience, is done by directing a reformation of the written instrument. The authorities to sustain this exception to the rule are numerous and strong. *Petesch v. Hambach*, 48 Wis. 447; *Conrad v. Schwamb*, 53 id. 372; *James v. Cutler*, 54 id. 172; *Stockbridge Iron Co. v. Hudson Iron Co.* 107 Mass. 290; *Evants v. Adm'r of Strode*, 11 Ohio, 480; *Pitcher v. Hennessey*, 48 N. Y. 415; *Norris v. Laberee*, 58 Me. 260; *Stafford v. Fetters*, 55 Iowa, 484; *Reed v. Root*, 59 id. 359; *Hunt v. Rhodes*, 1 Pet. 1; Pomeroy Spec. Perf. secs. 233, 234; Pomeroy's Eq. Jur. secs. 845, 1376; *Dickinson v. Glenney*, 27 Conn. 104; *Mead v. Westchester F. Ins. Co.* 64 N. Y. 453; Story's Eq. Jur. sec. 136. The true ground of distinction is taken and thoroughly discussed in *Stockbridge Iron Co. v. Hudson Iron Co.* 107 Mass. 319. The power of a court to correct a mistake of law in the meaning of a written contract is clearly put upon the ground of specific performance of an agreement precedent to, and shown by proof independent of, the writing. But no such agreement was shown in this case.

The following opinion was filed October 14, 1884:

ORTON, J. This is an action of ejectment, in which both parties claimed to hold the premises in dispute under and from Morgan L. Martin, the plaintiff and respondent by his deed of May, 1873, and the defendants and appellants by his deed of January, 1880. In the deed to the respondent the grant was of the whole tract, but thereinafter there was a clause which limited the grant to the interest and title acquired by said Martin by virtue of a deed executed to him by one Evarts, as sheriff of Outagamie county, dated December 23, 1871, which clearly conveyed only an undivided

half of said tract.   In this case, reported in 55 Wis. 96, it was held by this court that such limiting clause is inconsistent with the grant and is nugatory, and that the grant must prevail.   In the case as it thus stood the respondent rested upon that deed, in its terms, effect, and construction, insisting that it conveyed the whole tract and therefore the undivided half in dispute.   The judgment of the circuit court against the appellants was affirmed.   Within the proper time the appellants made application for the vacation of said judgment and for a new trial under sec. 3092, R. S., and the judgment was vacated and a new trial was granted.   The appellants thereupon amended their answer, setting up an equitable counterclaim for the reformation of said deed, so as to make it convey only the undivided half of said premises, according to the intention expressed in said limiting clause, alleging a mistake in the granting clause of said deed in that respect.   The respondent replied to said answer, denying the allegations of said counterclaim, and alleging the estoppel of said appellants from setting up such counterclaim by the former trial and judgment, and that if there was such mistake in said deed, still the same should not be corrected, because Martin should be adjudged to have held the half of the estate so conveyed by mistake to use of the plaintiff.

To these issues the evidence was addressed.   The findings of the court are mainly the history of the title to this tract of land, and only three findings of fact are necessary to be noticed in passing upon the questions raised and so ably argued on this appeal: (1) That it was the opinion of Martin that he only acquired, by the said sheriff's deed, the undivided one-half of said premises conveyed to the respondent before and held by it at the time of said sale, and that it was not his intention to convey any other interest or estate to the respondent; (2) that the mistake of Martin in conveying to the respondent the whole of said tract, instead of only an undivided half thereof, was a mistake of law and not a

mistake of fact; and (3) that if it was a mistake of fact, that the deed ought not to be corrected in that respect, because it placed the legal title of the whole tract where it belonged in equity. The counterclaim was therefore dismissed on its merits.

The various exceptions to evidence and to the findings need not be specially noticed any further than to say that they sufficiently raised the questions presented by counsel. These questions will be disposed of in their natural order: *First*. Is the plaintiff estopped, by the former trial and judgment, from setting up a mistake in the deed and from asking its reformation? *Second*. Was there any mistake shown by the evidence, and if so, was it such a mistake as can be corrected in equity? *Third*. If so, had the respondent such an equitable interest in the undivided half of the premises not intended to be conveyed by said deed, but which, nevertheless, was so conveyed thereby, that the deed ought in equity to stand uncorrected, as conveying the legal title to the respondent as the party entitled in equity thereto? *Ex æquo et bono*.

1. As to the estoppel it may be well to see whether there is anything in the counterclaim inconsistent with the defense relied upon on the former trial. The answer was a general denial, and the appellants relied upon the deed as, by its terms and effect and its true construction in reference to the subject matter and circumstances of its execution, conveying only an undivided one-half of the premises, and insisted that the limitation clause therein had so modified the grant, and that the deed should be so construed; but by force of a technical rule of law that clause could not have such effect, and the deed could not be so construed. In the counterclaim the appellant still insists that such limitation clause shall have effect in equity as expressing the intention of the parties, and that the grant should be so limited by a correction and reformation of the deed, and that both parties be-

lieved, and were mistaken in believing, that the deed itself had the legal effect of conveying only one half of the premises, and they, the appellants, now ask that such mutual mistake may be corrected. When the deed is reformed as prayed, then it will have the precise effect which the appellants insisted that it did have standing uncorrected on the former trial. Precisely the same object was sought on both trials, which was that the deed should have the effect to convey only the one-half, on the first trial by the deed as it was, and on the last trial by the deed reformed. The maxim, *allegans contraria non est audiendus*, can scarcely apply to these two defenses.

The respondent has not been prejudiced or his rights affected one way or the other by the appellant's having on the first trial relied upon the deed itself as not conveying the whole premises, and has not been influenced in its action either in court or *in pais* by the appellant so insisting. There was no judgment in the action when the new defense was interposed, as it had been vacated, and the action was to be tried as if it had never been tried, and as an original action, and the two defenses, one on the deed itself as not conveying the whole tract and the other for the reformation of the deed if necessary to that effect. If there had been no trial or judgment in the case, there can be no doubt that both of these defenses could be interposed to the action. There has never been a trial or judgment, so far as the present trial is concerned. The action is fully open to be tried *de novo*. If the circuit court had the discretion to allow such an amendment of the answer, and of that we have no doubt, it follows that the answer may be proved. The amendment was made without objection, and issue taken upon it by a replication. The first answer admitted nothing favorable to the respondent, nor was any proof offered under it that placed the respondent in any more favorable position than it occupied before.

Mr. Bigelow, in his work on Estoppel, 604, says, in the text: "When, then, no wrong would be done to the court or to other parties to a cause by permitting a change of position, a change should, in principle, and will, in fact, be allowed. Thus, where a party has given notice of appeal by mistake to a particular court when the appeal should have been made to another court, and has discovered his mistake before any step has been taken by others in consequence, he may, at *will*, correct himself, but only upon the footing that no prejudice is done to others. In *Favill v. Roberts*, 50 N. Y. 222, the plaintiff brought an action for the purpose of procuring title to a farm which he had purchased of the executor of John Roberts, of whom the defendants were heirs. The land had been sold and paid for under an order of court, and improvements had been made by the plaintiff, when it was discovered that the court had no authority to grant the order for the conveyance of the land. The plaintiff now sought to enforce a remedy against the heirs at law, and to compel a conveyance, on the ground that the executor acted with the consent and approbation of the heirs, and that they encouraged the sale. It was held that the plaintiff was entitled to his remedy." Bigelow, Estop. 595. Those two causes of action were far more inconsistent than the two defenses in this case.

"The grantee of land conveyed by an intestate with intent to defraud his creditors is not estopped by taking under the deed and acting upon it to object, as one of the creditors of the estate, that the deed was fraudulent." *Norton v. Norton*, 5 Cush. 524. A case in point is that of *N. W. U. P. Co. v. Shaw*, 37 Wis. 655. The company purchased from Shaw a quantity of wheat, to be delivered, and paid down upon it $1,000. Shaw failed to deliver the wheat, and the company brought suit upon the contract and claimed (1) the $1,000; (2) damages for the breach of the contract; and (3) damages for the value of the use of a barge detained for

the carriage of the wheat.   On the trial the circuit court
held that the contract was *ultra vires* and void, the company
having no power to make such a contract for the purchase
of wheat, it being a common carrier only, and judgment
was rendered for the defendant.   On appeal to this court it
was held that the circuit court properly decided the contract
to be *ultra vires* and void; but that was no ground for de-
feating a recovery of the $1,000 paid upon it, but rather
good ground for such recovery, and that the complaint
should have been amended, setting up that the contract was
void for that reason, and the plaintiff should have recovered
the money paid upon it, and reversed the judgment and
granted a new trial.

In *Steinbach v. Relief F. Ins. Co.* 77 N. Y. 498, there was
a judgment against the plaintiff in his action on the policy,
which had been affirmed by the supreme court of the United
States and was pleaded in bar of the suit to reform the policy.
But here there is no judgment in the way.   The case cited
by the learned counsel of the respondent ( *Washburn v. G.
W. Ins. Co.* 114 Mass. 175) illustrates this principle fully.
A bill in equity ·was pending to reform the policy, and the
plaintiff brought another suit upon the policy, alleging com-
pliance with its terms, and after a trial and *judgment* against
him therein he was held to have waived his right to prose-
cute further his bill.   It may be observed that he was allowed
to prosecute his second suit, notwithstanding the pendency
of the first.   It was the judgment that stood in his way,
and such was the case of *Sanger v. Wood*, 3 Johns. Ch. 416,
cited by the learned counsel.   The plaintiff took judgment
on the contract, and afterwards sought to set aside the con-
tract on the ground of fraud.

Without any disrespect to the learned counsel, it may be
said that none of the authorities cited by him are in the
way of allowing proof of this counterclaim.   The rights of
no one are affected, and much less fixed and determined, by

The Green Bay & Mississippi Canal Co. vs. Hewitt, Jr., and others.

the first trial and judgment, since such judgment is vacated and a new trial granted. The authorities cited are not applicable to such a case, and the doctrine of estoppel is misapplied. *Cunningham v. Milwaukee*, 13 Wis. 120, does not bear on this question. The second or new trial in ejectment, under the statute, must, of course, be on the *same cause of action*. That cannot be changed by amendment so as to make another cause of action in any case or at any stage of the proceedings, but that does not imply that the answer may not be amended and other defenses interposed, although inconsistent.

2. Was there any mistake shown by the evidence, and if so, was it such as may be corrected in equity? We are entirely satisfied that there was a mistake in drawing the deed. The mistake was in not limiting the grant to one undivided half of the tract by apt words in the granting clause of the deed, instead of undertaking to so limit the grant by this independent clause thereinafter inserted. Both parties unquestionably understood and intended that the deed should be a conveyance of only one half, and both parties supposed that it was so drawn. The evidence is overwhelming that both parties intended that the conveyance should be made for only one half. Nothing else had ever been spoken of. Martin held the lien of his judgment against a portion of the canal and works and this *undivided one-half* of this hydraulic tract, which belonged to the canal company. The United States, through proper officers, refused to pay the award until this incumbrance was removed. In the mean time Mr. Martin had this interest sold under execution, and bought it in and received the sheriff's deed, which covered, *nominally*, the whole tract, but conveyed only the interest that the canal company had in it, which was only one half. It was the business of Mr. Stevens, on behalf of the company, to obtain this title from Mr. Martin.

The United States government was only interested in hav-

ing a clear title to the canal and works which it had bought of the canal company, but Mr. Martin wished to have his whole claim paid, and to convey the interest which he held by the sheriff's deed. It was not contemplated that he should convey only his interest in the canal and retain his interest in the hydraulic tract. It was one transaction, which embraced his whole interest as the purchaser under his execution. The consideration he was to receive was for this, and this only. Martin deeded to the United States his interest in the canal acquired by that sale, and was to convey to the canal company his interest in the hydraulic tract acquired by that sale. It is insisted by the learned counsel of the respondent that there was no bargain or contract to this effect shown by the evidence. But such a contract was clearly implied by the whole transaction from the beginning to the end of it. It had no other purpose, meaning, or significance, solution or explanation, than that Martin should execute these deeds for such consideration. Martin held no other interest in this tract or canal that the United States was interested in obtaining from him than this, upon which his judgment was a lien, and this was all that was ever considered in the negotiations of the parties, or contemplated by them. To execute and carry out this understanding and agreement, so far as this tract was concerned, the deed in question was drawn and executed. The sole object, purpose, or design of all the parties concerned, or of their agents or counsel, was to relieve this tract from the lien or incumbrance of Martin's judgment, which stood in the way of the consummation of the sale by the canal company to the United States. According to the evidence Martin so understood it; Stevens, acting for the canal company and at the same time for the United States, so understood it; and so it was understood by the legal adviser, Mr. J. C. Gregory, and by Charles Noble Gregory, the attorney who drew the deed; and they all unquestionably supposed that the deed was so

drawn and executed. It was drawn to express this intention and such a limitation of the grant.

The mistake was in placing such limitation in the deed *after* the grant, instead of *in* the grant itself. But this limitation clause, even where it was inserted in the deed, is potent and conclusive as to the real agreement and understanding and intention of the parties. It may not have technically limited the grant to one half of the tract; but does it not estop the parties to the deed and their privies from afterwards disputing the intention expressed by it, at least in equity, when the correction of the mistake is sought? Speculation as to what kind of a mistake this was, whether of fact or of law, and as to what it should be named or how classified, is idle and fruitless. Things and the substance of things, and the established principles of reason and equity, should be considered in such a case, rather than mere names which may mislead, and if this mistake was mutual and of all of the parties concerned, which was substantially admitted by them, ought it not in fairness and equity to be corrected, and the deed reformed in this respect? Should the court be restrained from applying an equitable remedy in such a case by a decision here and there that a similar mistake was of *law*, and therefore could not be corrected, or of *fact*, and therefore remediless. I shall not cite many authorities or comment at any length upon those cited, to extend this opinion needlessly. The decisions are very conflicting and in much confusion on this question, and abound in nice and critical distinctions. If, in cases substantially like this in principle, a reformation of the deed has been allowed, they may be referred to, to support and sanction the very strong first impression we have that this deed ought to be reformed.

This question was very fully argued by counsel, and very fully and ably treated and considered by Chief Justice Dixon in *Hurd v. Hall*, 12 Wis. 125, in respect to a mistake

of fact and the distinction between such a mistake and one of law. As a matter of course we have no right to violate the maxim *ignorantia juris non excusat*, and courts sometimes have struggled in clear cases of mistake of law to make it, if possible, a mistake of mixed law and fact, in order to administer equitable relief. It may be said in this case that the parties knew the contents of this deed, and just where the limitation clause was placed in it; but they clearly did not know that it was inserted in the wrong place. They may have depended and relied upon their counsel, and especially upon the attorney who drew the deed, to insert the limitation in the proper place, and supposed he had done so. He was mistaken, and so were they. Was this a mistake of fact?

As we have seen, there was a clear and explicit agreement and understanding that this deed should be given to convey only the interest which Mr. Martin held in the tract by virtue of his sheriff's deed. Mr. C. N. Gregory was employed to draw up such a deed, but in drawing it he made the mistake of so drawing it that it conveyed the whole tract, instead of the one-half covered by the sheriff's deed. Does not this case meet in every respect the admission of the learned counsel of the respondent in his brief, as follows: "A middle ground is being built up. It is, where there is a complete precedent contract or agreement not executed — not correctly expressed in the written agreement — a court of equity will decree a specific performance of the precedent contract. This, for convenience, is done by directing reformation of the written instrument. The authorities to sustain this exception to the rule are numerous and strong." And the learned counsel cites *Petesch v. Hambach*, 48 Wis. 443; *Conrad v. Schwamb*, 53 Wis. 372; *James v. Cutler*, 54 Wis. 172, and numerous other authorities, to sustain the admitted proposition. In one of these cases (*Stockbridge Iron Co. v. Hudson Iron Co.* 107 Mass.

290) it is said by Judge WELLS: "It will be seen that there is a question thus presented by both branches of the issue, when taken together, which is not merely of a mistake of law as to the construction and effect of the deed, but whether, by reason of such mutual mistake, the deed, contrary to the real intention of both parties, failed to be a full and complete execution of the previous contract of purchase and sale. Such a mistake, if there are no legal objections to the enforcement of the oral agreement, will furnish sufficient ground for the interference of a court of equity to require a rectification of the deed." In that case the mistake was in the legal effect of a reservation or exception in the deed, and was the mistake of the person who drew the deed, the parties supposing that it expressed properly the reservation or exception according to their previous agreement.

In the last edition of Kerr on Frauds, 468, 469, in view of established authority on this question, and quoting from authority, it is said: "'Private right of ownership is a matter of fact; it may also be the result of a matter of law; but if parties contract under a mutual mistake and misapprehension as to their relative and respective rights, the result is that the agreement is liable to be set aside as having proceeded on a common mistake.' 'Ignorance of a matter of law,' said Lord CHELMSFORD in *Earl Beauchamp v. Winn*, L. R. 6 E. & I. App. Cas. 234, 'arising upon the *doubtful construction of a grant*, is very different from ignorance of a *rule* of law. Therefore, although when a certain construction has been put by a court of law upon a deed, it must be taken that the legal construction was clear, yet the ignorance, before the decision, of what was the true construction, cannot be pressed to the extent of depriving a person of relief on the ground that he was bound himself to have known beforehand how the grant must be construed.' When, therefore, a man, through misapprehension or mistake of the law, parts with or gives up a private right of

property, or assumes obligations upon grounds upon which he would not have acted but for such misapprehension, a court of equity may grant relief, if, under the general circumstances of the case, it is satisfied that the party benefited by the mistake cannot, in conscience, retain the benefit or advantage so acquired." I have quoted largely from that authority because this case is exactly described. The cases in this court, above cited, are in accordance with this principle, although the mistake in those cases was in the description of the premises conveyed.

In *Woodbury Savings Bank v. C. O. F. & M. Ins. Co.* 31 Conn. 517, the mistake was by the agent in drawing the application for the policy to cover the property itself, instead of the mortgagee's interest in it. The court said: " There was a mistake as to the proper mode of filling out the papers on both sides. The application was made out in the wrong name, and the policy was made to the wrong person; but there was no fraud or misrepresentation. The papers would have been made out right if they had known how to do it; and it is immaterial whether the mistake was one of fact or of law;" citing *Stedwell v. Anderson,* 21 Conn. 139. In *Hunt v. Rousmanier's Adm'rs,* 8 Wheat. 174, the legal counsel of the parties advised that a power of attorney should be drawn and executed, instead of a mortgage, for certain security, which the power failed to give. Chief Justice MARSHALL said: " In this case the fact of mistake is placed beyond controversy. . . . We find no case which we think precisely in point, and are unwilling, when the effect of the instrument is acknowledged to have been entirely misunderstood by both parties, to say that a court of equity is incapable of affording relief." A bond was drawn *joint* by the mistake of the person who drew it, when it should have been joint and *several;* and it was corrected in equity. *Simpson v. Vaughan,* 2 Atk. 33; *Underhill v. Horwood,* 10 Ves. Jr. 209. The cases are numerous of the correction of

the mistake of the parties in reducing their agreement to writing. In some it is called a mistake of fact, and in others of law; and it made no difference which it was called, the relief was granted in all such cases. *Pitcher v. Hennessey*, 48 N. Y. 416, and *Maher v. Hibernia Ins. Co.* 67 N. Y. 283, are in point.

It is a little singular that there should have been any conflict of decisions on this question, when as early as 1730 it was decided by the old English court of chancery that when of four brothers the second died, and the eldest entered into possession of his lands as heir, and the youngest brother claimed it, and they went to a school-master who sometimes acted as an attorney, and consulted him as to their rights, and he having advised them that lands *descend* to heirs, and not *ascend*, and therefore the youngest was entitled to the estate of his deceased brother; and, on that advice, papers were drawn and executed by the oldest brother, giving the youngest brother an interest in the land to save litigation,— the Lord Chancellor decreed that all such papers should be delivered up to the plaintiff as having been obtained by mistake, etc. *Lansdown v. Lansdown*, Mos. 364. A promissory note was assigned unqualifiedly, when, according to contract, it ought to have been *without recourse*. It was reformed in equity according to the intention of the parties. *Stafford v. Fetters*, 55 Iowa, 484.

But this opinion on this question has been already extended too long. The learned and candid counsel of the respondent virtually admitted the law to be as above stated, and the question might have rested on such admission; but it being involved in the case by the finding of the court, and in respect to such a case a new question in this court, and there being a conflict of decisions elsewhere, to some extent, on the question, may justify this consideration of it. It follows from the above that there was a contract between the parties for a conveyance of only one half of the tract,

and, by mistake, the deed was a conveyance of the whole, and that such mistake may and ought to be corrected by reformation of the deed accordingly.

3. The remaining question will be disposed of briefly. Had the canal company any equitable title or interest in the half of said tract not intended to be conveyed by the deed, so as to prevent its correction? One George W. Lawe owned and conveyed this undivided half to Mr. Martin, in 1851, in consideration of one dollar. Martin gave Lawe a bond conditioned that he should in effect fulfil his contract with the state in the construction of the improvement and save Lawe harmless from the state. The state was bound to discharge the trust it had assumed by accepting the grant for that purpose to construct and complete the contemplated works for the improvement of the Fox and Wisconsin rivers. This was all the interest the state had in it, and all it could have under her constitution. She had no right to construct hydraulic works for any other purpose, or purchase or condemn the lands of private owners for hydraulic purposes. Martin had no such relations to the state or the improvement, nor could have lawfully had, by which his purchase of one half of this tract would inure to the state. All deeds which have since been made by Martin have expressly reserved and excepted this interest, or been made subject to this deed. The state and its successors in this improvement have always recognized and have never claimed this interest of Martin, and of those holding it under him, in this half of the tract he purchased from Lawe. There is no evidence whatever of any equitable title in the canal company to this half of the tract which can prevent the reformation of the deed in question as prayed in the counterclaim.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to render judgment in the case according to this opinion.

Upon a motion for a rehearing there were briefs for the respondent by *Moses Hooper* and *E. Mariner*, and a brief for the appellants by *David S. Ordway*.

The following opinion was filed March 3, 1885:

ORTON, J. The learned counsel of the respondent, on their motion for a rehearing of this case, have submitted very able and elaborate arguments.

On the main question of the mistake in the deed of Morgan L. Martin to the respondent, and the jurisdiction of a court of chancery to correct it, nothing is now presented which was not fully considered by the court in deciding the case.

In respect to the equity of the respondent in the undivided half of the premises not intended to be conveyed by Martin by that deed, which ought to deter a court of equity from correcting such mistake, there seems to be a misapprehension of the opinion. It was certainly not intended to express the opinion that the state or the company had not the right to take the lands of private owners necessary for the improvement, and the water powers created thereby and incidental thereto. It was only intended to say that the state had no right to take the lands of private owners for mere mill-sites, or ground on which to build and construct mills or manufacturing establishments, and not used for the water power itself, to which the water from said water powers may be carried, whether contiguous to or remote from such water powers. It was supposed that such meaning was conveyed by the use of the language "hydraulic works" and "hydraulic purposes." The opinion is authority only as it uses this language in application to this particular tract of land, as it was situated when Martin obtained title thereto. In respect to this tract of land so situated, it was held that the state had or could have no right, legal or equitable, present or prospective, which Martin,

Peschel vs. The Chicago, Milwaukee & St. Paul R'y Co.

whatever his relations were to the state and the improvement at the time, had not the right to acquire and hold as against the state and its successors in the improvement.

Sec. 15 of the improvement act of 1848 [1] confers the power of condemnation of such lands, etc., as are necessary for the use of the improvement; and sec. 16 confers the right to take lands *which belonged to the state*, valuable for hydraulic or commercial purposes, and such lands are thereby reserved to the state. It was not intended to decide either of these sections unconstitutional.

*By the Court.*— Motion denied.

---

[1] "An act to provide for the improvement of the Fox and Wisconsin rivers and connecting the same by a canal." Laws of 1848, p. 53.