944

WARREN et al. v. OSBORNE et al.

No. 5827.

Court of Civil Appeals of Texas. Texarkana.

Sept. 25, 1941.

Rehearing Denied Oct. 16, 1941.

Norman M. West, of Henderson, for appellants.

Frank C. Bolton and V. W. McDavid, both of Henderson, J. P. Rutherford, Jr., of Overton, and Paul A. McDermott, of Ft. Worth, for appellees.

WILLIAMS, Justice.

Helen C. Warren and others, the fee owners, executed in 1931 oil and gas leases covering several parcels and constituting one tract of land near Overton, Texas, which will be herein referred to as the lease and the tract. The descriptive calls total 113.64 acres, more or less. The lease provided for a ⅛ royalty to be paid the les'sors. Mrs. Warren as the owner of an undivided ⅛ interest or fourteen-plus acres was entitled to receive ⅛ of ⅛ of all oil produced from the tract. In July, 1939, and for months prior thereto, Mrs. Warren's 1/64 interest in all the oil produced averaged $140 monthly.

In a mineral conveyance, dated June 28, 1939, from appellants, Mrs. Warren and husband, to Mary S. Silvey, an appellee, the granting clause reads: "* * * have granted, sold, * * * and delivered and by these presents do grant, sell * * * and deliver unto the said grantee 1/128 in and to all the oil, gas and other minerals in and under, and that may be produced from the following described land," (then follows same description of land as contained in the lease). The royalty clause reads: "Said land being now under an oil and gas lease executed in favor of any valid lease of record, it is understood and agreed that this sale is made subject to the terms of said lease covering same, but covers and includes 1/128 of all the oil royalty and gas rentals or royalty due and to be paid under the terms of said lease." The rental and reverter clause reads:

"It is understood and agreed that 1/128th of the money rentals, which may be paid, * * * to extend the term within which a well may be begun * * * is to be paid to the said Grantee; and, in event that the above described lease for any reason becomes canceled or forfeited, then and in that event, Grantee shall own 1/128th of all oil, gas and other minerals in and under said lands, together with a like 1/128th interest in all bonuses paid, and all royalties and rentals provided for in future oil, gas and mineral leases covering the above described lands."

Thereafter, appellants and Mrs. Silvey on July 5, 1939, executed transfer or division orders, prepared by the pipe line company taking the oil from the lease, which called for 1/128 of the ⅛ royalty to be paid to Mrs. Silvey. A mineral conveyance, dated July 26, 1939, from appellants to H. N. Osborne, the other appellee, de-

scribes the same land and is identical in all particulars with the wording in the Silvey deed, except the date, name of grantee, and the fractional interest covered. The fractional interest "1/256" was used in the Osborne deed instead of "1/128" as used in the Silvey deed.

Mrs. Silvey's refusal to accept the pipe line check for $7.69 which purported to represent her share of the proceeds of the oil produced in July; Osborne's refusal to accept a transfer or division order of 1/256 of ⅛ to be paid to him; and their demands upon the pipe line company for their respective claims of 1/16 of ⅛ and 1/32 of ⅛ of the proceeds of the oil produced, resulted in this suit by appellants against the appellees, with each of the latter answering with a cross action against appellants. Although appellees were joined as defendants, to which no complaint is made, they were not jointly interested in the respective deals.

In their pleadings, appellants asserted that the mineral deeds conveyed an undivided 1/128 and 1/256 interest, respectively, in the minerals subject to the outstanding lease, or a conveyance of such a fractional interest in the rents, royalty and reversion, and prayed for an adjudication accordingly, and for removal of cloud from title by reason of claims made by appellees. Appellees pleaded that the granting clauses conveyed 1/128 and 1/256, respectively, of all oil produced from the tract, and that this clause controlled and prevailed over the subsequent clauses, and prayed for construction of the deeds accordingly. Pleading in the alternative, appellees sought reformation of the royalty, rental and reverter clauses so as to read 1/16 and 1/32, respectively, in same, alleging mutual mistake of the parties in reducing to writing their respective contracts and agreements. No complaint is made to any pleading as being insufficient to support the relief sought. The granting clause in the deeds are not attacked by any litigant.

In response to special issues the jury found that, prior to and at the time of the execution of the mineral deed from appellants to Mrs. Silvey, it was mutually understood and agreed by and between them, and was the intention of appellants acting by and through their agent, O. L. Jacobs: (1) To sell and Mrs. Silvey to buy ½ of all the oil and gas royalty then owned by Mrs. Warren in or that might be produced from the tract; (2) likewise the intent of appellants to sell and Mrs. Silvey to buy seven royalty acres based upon a valuation of $300 per royalty acre; (3) that it was understood and agreed between them that such interest then conveyed would bring an income of approximately $60 per month. The jury further found that prior to and at the time of the execution and delivery of the deed into Osborne it was mutually understood and agreed by and between appellants and Osborne and was the intention (1) of appellants to sell and Osborne to buy ¼ of all the oil and gas royalty interest originally owned by Mrs. Warren in and under and that might be produced from the tract; (2) likewise appellants to sell and Osborne to buy 3½ royalty acres; (3) that such interest would bring an income of approximately $30 per month.

In response to special issue No. 17 the jury found "that at the time of the execution and delivery of the mineral deed to Mrs. Silvey, Mrs. Warren knew and understood that the fraction '1/128' was in said deed in each place where it appears therein"; and to No. 18 that Mrs. Warren knew and understood that the fraction "1/256" was in the Osborne deed in each place where it appears therein at the time of its execution and delivery. Special issues Nos. 19 and 20, to the submission of which and the findings on same appellees urged various objections and exceptions, not necessary to detail, were both answered "Yes." Issue No. 19 reads:

"Do you find from a preponderance of the evidence in this case that the failure on the part of O. L. Jacobs, as agent for Mary S. Silvey, to discover, prior to the delivery of said mineral deed executed by Helen C. Warren and husband to Mary S. Silvey, dated June 28, 1939, that said deed by its terms conveyed less than one sixteenth (1/16) of the royalty due to be paid from the oil produced from the premises therein described, was due to negligence or want of due care on the part of said O. L. Jacobs, as such agent?"

Issue No. 20 reads: "Do you find from a preponderance of the evidence in this case that the failure on the part of J. B. Rutherford, Jr., as agent of H. N. Osborne, to discover, prior to the delivery of said deed executed by Helen C. Warren and husband to H. N. Osborne, dated July 26, 1939, that said deed did not by its terms convey as much as one thirty second (1/32) of the royalty due to be paid under the terms of the then outstanding leases cover-

ing the premises described in said deed, was due to negligence or want of care on the part of said J. B. Rutherford, Jr., as such agent?"

After considering various motions timely filed, the court disregarded the findings to issues Nos. 19 and 20, refused appellants' motion for judgment non obstante veredicto, and entered judgment which did not disturb the granting clauses but reformed the succeeding clauses so as to read and call for 1/16 and 1/32, respectively, instead of 1/128 and 1/256, respectively, as written in the deeds. Appellants assert: (1) As far as the issue of construction is concerned, each deed being a clear and unambiguous conveyance of a 1/128 and 1/256 interest, respectively, in the minerals subject to the outstanding lease, they were entitled to a judgment non obstante veredicto; (2) that the jury's findings to issues Nos. 17 to 20, inclusive, precluded appellees a recovery on the issue of reformation.

O. L. Jacobs, who negotiated and effected the sale to Mrs. Silvey, secured the services of a clerk in an abstract office to prepare that deed, delivered the $2,100 evidenced by check in payment to Mrs. Warren, took appellants' acknowledgments and thereafter delivered same to the county clerk for recordation. Appellants paid Jacobs $100 as commission for his services. Osborne and Mrs. Warren later effected their own deal, in which Osborne claims he bought ½ as much royalty as had been sold to Mrs. Silvey, namely, 3½ royalty acres. Osborne procured Rutherford, mentioned in issue No. 20, to draw the deed. Rutherford, a young attorney, copied from the Silvey deed then of record, using the fraction "1/256" instead of "1/128", then took appellants' acknowledgments and delivered the deed for recordation. Appellants paid Rutherford for .his services. Osborne paid Mrs. Warren $700 for the royalty. The Warrens and Silvey are related. Jacobs, a son-in-law of Mrs. Silvey, and a former teacher and merchant, was engaged in the insurance business at the time here involved and had theretofore dealt somewhat in oil properties. Osborne was a jeweler. The royalty sales here involved were the first ever made by appellants, and, as reflected by this record, they were the first purchases ever made by appellees.

■ If the jury's findings that Mrs. Warren knew and understood that the deeds contained the fractions as written be tantamount to a finding that she knew the legal effect of same and "said nothing, she was guilty of such inequitable conduct as to amount to fraud." And as stated in Columbian National Life Insurance Company v. Black, 10 Cir., 35 F.2d 571, 574, 71 A.L.R. 128, quoting from Williston on Contracts, Vol. 3, p. 2745, "Knowledge by one party of the other's mistake regarding the expression of the contract is equivalent to mutual mistake."

■ And regardless of the jury's findings that Rutherford and Jacobs were negligent in not discovering the alleged errors in the deeds, the fact still remains, from the jury's findings, that the contracting parties had mutually agreed, mutually understood and mutually intended at the time of the execution and delivery of the respective deeds that appellants were selling and appellees were buying "½" and "¼" of Mrs. Warren's interest in the royalty, namely, 1/16 and 1/32 of the whole royalty. The evidence amply supports such findings of mutual intent, and appellants make no attack upon same as being unsupported by the evidence. If such a mutual intent existed, then a mutual mistake was made in reducing the agreements to writing. This mistake was made in the use of the fractions inserted in the blanks of the form deeds. The term "mistake" involves some element of negligence which may or may not be excusable under the circumstances involved in a particular case. As stated in Cox v. Hall, 54 Mont. 154, 168 P. 519, 521: "Courts of equity are not bound by cast-iron rules, but are governed by rules which are flexible and adapt themselves to particular exigencies, so that relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other."

The evidence reflects that this tract is on the edge of the oil field, with wells in that vicinity then making water, and that $2,100 was a fair price for 1/16 royalty interest, or seven royalty acres. If appellants' position be sustained on the issue of reformation, then Mrs. Silvey acquired only 1/128 of a ⅛ royalty interest, or 1/1024 of the oil produced, or a 114/128 royalty-acre interest which would require twenty-odd years' production to reimburse the purchaser. The same observation with other fractions are likewise applicable to Osborne.

After due consideration of all the circumstances reflected by the evidence in this case; the inexperience of the litigants and scriveners in dealing with royalty and the deeds; the confusion which naturally arose from Mrs. Warren's interest of an undivided ⅛; and after weighing the resulting injustice of a denial of reformation, such alleged negligence as here is excusable and will not defeat the interposition of equity to carry out the mutual intent and prevent a gross injustice. Kelley v. Ward, 94 Tex. 289, 60 S.W. 311; Bates v. Lefforge, Tex.Com.App., 63 S.W. 2d 360; Bordovsky v. Dougherty, Tex. Civ.App., 106 S.W.2d 779; Pegues v. Dilworth, 134 Tex. 169, 132 S.W.2d 582; Green Bay & Mississippi Canal Co. v. Hewitt, 62 Wis. 316, 21 N.W. 216, 22 N.W. 588; Cox v. Hall, 54 Mont. 154, 168 P. 519; Parish v. Camplin, 139 Ind. 1, 37 N.E. 607. This view taken by the learned trial judge, evidenced by the judgment entered, is sustained.

The judgment is affirmed.