**ACE DRUG MARTS, INC. and Ace-Dodd Pharmacy, Inc., Appellants,**

v.

**John STERLING and wife, Faye Bauer Sterling, Appellees.**

No. 793.

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 21, 1973.

Rehearing Denied Jan. 3, 1974.

William S. Fly, Fly, Moeller & Stevenson, Victoria, Martin J. DeStefano, Austin, for appellants.

O. F. Jones, Victoria, Lawrence A. Dio, Port Lavaca, for appellees.

## OPINION

YOUNG, Justice.

This is a suit to reform a lease and for sums due under the lease. John Sterling and wife, Faye Bauer Sterling, as lessors, of a building where they had operated the Sterling Drug Store, sued the lessee, Ace Drug Marts, Inc., and the assignee of the lease, Ace-Dodd Pharmacy, Inc., to reform the lease so as to charge the lessee, rather than lessor, with the payment of utilities. The plaintiffs also sought recovery of sums which the defendants had deducted from their monthly rental payments. Such sums were alleged to be equal to the utility charges which had been billed to the leased premises.

The case was tried before a jury. On the basis of the jury verdict, the trial court ordered that the lease be reformed to require the lessee to pay the utilities and that plaintiffs recover $3,517.95, which was the amount of the deductions from the rentals, plus interest thereon, and all costs of court. On November 21, 1972, the trial court overruled the defendants' Motion to Disregard Jury Findings and their Alternative Motion for Judgment. The defendants' Amended Motion for New Trial was overruled January 16, 1973, and they have perfected this appeal.

The testimony shows that in June, 1971, John Dodd, a licensed pharmacist, contacted appellee, Fay Bauer Sterling, concerning the possible purchase of the Sterling Drug Store which she operated in Port Lavaca, Texas. Dodd advised Mrs. Sterling that he had backers who would assist him in purchasing the store. The backers were appellant, Ace Drug Marts, Inc., whose offices are in Austin, Texas. Mrs. Sterling expressed an interest in selling the store, but there were no further negotiations until July, 1971.

Frank Dannelley and Wayne Berry are the principal shareholders of Ace Drug Marts, Inc., and Ace-Dodd Pharmacy, Inc.; both are pharmacists. On July 21, 1971, Wayne Berry met with Mrs. Faye Sterling and her attorney, Honorable Mike Fricke, in the latter's law office. During this meeting there was apparently a general discussion of the terms of the proposed sale of the pharmacy business and the proposed lease of the premises. Faye Sterling and Mike Fricke testified that the utilities were discussed at this meeting, and that it was agreed that the lessees would pay the utilities on the premises.

On July 26, 1971, a second meeting was held in Mike Fricke's office. The testimony shows that Frank Dannelley, Wayne Berry, Faye Sterling, John Sterling and Mike Fricke were in attendance; there is conflicting testimony that John Dodd was also present. Once again there appears to have been a general discussion of the terms of the sale and lease. Mrs. Sterling testified that Mike Fricke stated that the lessees were to pay the utilities and that Frank Dannelley then said "fine" or "OK". John Sterling testified that he saw the defendants nod their heads in the affirmative when Mike Fricke recited that the lessees would pay the utilities. Mike Fricke testified that there had been a general discussion of the utilities and that he had made a note that the lessee was to pay the utilities. Frank Dannelley testified that there was no mention of who would pay the utilities during the July 26th meeting. Mrs. Sterling also testified that "everything was pretty well firmed up on the 26th as to the drafting of the lease". Mike Fricke testified that the parties had reached an agreement at the July 26th meeting.

Thereafter, Mike Fricke prepared the lease and other instruments necessary for the sale and lease. In the afternoon of Friday, July 30, Mike Fricke gave a copy of the lease to the Sterlings and John Dodd picked up a copy of the lease. A copy of the lease was shipped, via bus, to Frank Dannelley. Frank Dannelley received the copy Saturday, July 31, but was unable to contact his lawyer to review the lease (Mike Fricke was the only lawyer who took part in the negotiation of the sale and lease, and in the execution of the instruments pertaining thereto). Frank Dannelley testified that while reading the lease Saturday night, he discovered that the lease provided for the lessor to pay the utilities. He said he considered this as an offer on the part of the lessors to so pay the utilities.

On Sunday, August 1, 1971, Frank Dannelley and Wayne Berry drove to Port Lavaca. It was during this drive, Wayne Berry testified, that he read the lease.

On Monday, August 2, 1971, Frank Dannelley, Wayne Berry, Faye and John Sterling, John Dodd, and Mike Fricke met again in the latter's office. Frank Dannelley testified that he discovered an error in the promissory note which he brought to Fricke's attention and that the note was corrected. Dannelley also testified that he insisted that "a removal of fixtures" clause be added to the lease and that it was in fact added. At the conclusion of the August 2nd meeting, the lease was executed, and a bill of sale, promissory note, financing statement, and two security agreements were executed to consummate the sale.

Paragraph five of the lease reads in pertinent part as follows:

"V. UTILITIES AND TAXES

*Lessor* hereunder agrees to pay all gas, electric water, sewage and other utility charges." (Emphasis supplied)

The lease provided that the first rental payment was to be made on August 10, 1971; that payment was made in full. Faye Sterling testified that ten days or two weeks after execution of the lease she was contacted by Central Power and Light Co. and that she then learned, for the first time, the lease provided that the lessors would pay the utilities. The lessors refused to pay the utility charges and assert that the lease was supposed to require the lessee to pay the utilities. The lessee has deducted the monthly utility bills from the monthly rental paid to the lessors. On September 2, 1971, the lessors (Sterlings) filed this suit to reform the lease and to recover the amounts deducted from the rental.

The jury answers to special issues that we consider pertinent are substantially as follows:

1. That all the parties had agreed, prior to July 26, 1971, that the utilities were to be paid by the defendants (lessees and appellants herein) (special issue no. 1);

2. That all the parties agreed at the July 26th meeting that the defendants were to pay the utilities (special issue no. 2);

3. That at the time the lease was executed, August 2, 1971, the plaintiffs (lessors and appellees herein) believed that the lease provided that the defendants would pay the utilities (special issue no. 3);

4. That at the time the lease was executed, August 2, 1971, the defendants did not believe that the lease provided that the defendants would pay the utilities (special issue no. 4);

5. That at the time the lease was executed, the defendants acting through its officers, Wayne Berry and Frank Dannelley, knew that the lease provided for the "lessor" to pay the utilities (special issue no. 5);

6. That at the time the lease was executed, the defendants, acting through its officers, Wayne Berry and Frank Dannel-

ley, failed to call to the attention of the plaintiffs the provision in the lease providing for the "lessor" to pay the utilities (special issue no. 6);

7. That the lease failed to correctly set out the previous agreement of the parties as to who was to pay the utilities (special issue no. 7);

8. That the payment of the utilities was a material factor in connection with the lease (special issue no. 8);

9. That Mike Fricke was not representing interests of both plaintiffs and defendants in connection with all the transactions in question (special issue no. 9);

10. That the mistake in the lease was solely the result of an accident (special issue no. 10); and,

11. That John Sterling or Faye Sterling (plaintiffs and appellees herein) had equal knowledge, or access to equal knowledge, with defendants that paragraph V of the lease provided that "lessor" should pay the utilities.

From the evidence outlined above, we determine that there was ample evidence to sustain these jury findings (with the possible exception of special issue no. 10, which we will discuss later).

■ The appellants assert eleven points of error. In their points of error numbered 1 and 6, the appellants assert that the trial court erred in permitting the lease to be varied by parol or extrinsic evidence. The appellees have alleged mutual mistake and fraud. Where such allegations are made as grounds of relief from a written instrument, parol and extrinsic evidence is admissible. Continental Oil Co. v. Doornbos, 402 S.W.2d 879 (Tex.Sup.1966). Olvey v. Jones, 137 Tex. 639, 156 S.W.2d 977 (Tex.Comm'n App.1941, opinion adopted); Pegues v. Dilworth, 134 Tex. 169, 132 S. W.2d 582 (Tex.Comm'n App.1939, opinion adopted). We overrule appellants' points numbered 1 and 6.

Appellants contend, in their points of error numbered 3, 10 and 11, that because there was no jury finding of "mutual mistake" or "fraud" and that there were jury findings in effect, sustaining only "unilateral mistake", the trial court thus erred in granting its judgment of reformation. The general rule in this regard, which all parties recognize, is set out in St. Paul Fire & Marine Ins. Co. v. Culwell, 62 S. W.2d 100, 101 (Tex.Comm'n App.1933, judgment adopted) as follows:

"Equity has jurisdiction to reform written instruments in cases of *mutual* mistake, but a written contract will not be reformed in equity because of a mistake, in the absence of fraud, unless it is mutual; that is, common to both parties, and each under the same mistake as to its terms". (cited cases omitted.)

In the case at bar there certainly was not a jury finding of "mutual mistake", as such, in view of special issue no. 4 wherein the jury found, in effect, that the appellants were not mistaken as to the lease terms regarding who was to pay the utilities. In the prior issue no. 3, the jury, in effect, found that the appellees did so make a mistake. To sustain the judgment, according to the general rule above, the appellees would seem to be relegated to "fraud" only in that, of the parties, only they were mistaken.

There is an old and accepted refinement of the above general rule in respect to mistake of only one party to a contract. That is set out in Conn v. Hagan, 93 Tex. 334, 55 S.W. 323 (1900) at page 325:

"Where there has been a mistake of one party, accompanied by fraud or other *inequitable conduct* of the remaining party, the instrument may be made to conform to the agreement or transaction entered into, according to the intention of the parties." (cit. omitted.) (Emphasis supplied.)

Yet another aspect of the general rules concerning reformation based on mistake is characterized by Warren v. Osborne, 154 S.W.2d 944 (Tex.Civ.App.—Texarkana 1941, ref'd w. o. m.) at page 946: (Cit. omitted)

"Knowledge by one party of the other's mistake regarding the expression of the contract is *equivalent to mutual mistake.*" (Emphasis supplied.)

We deem appropriate a brief summary at this time of some of the matters in the record tested by the rules above set out. The term of the subject lease is for ten years. For the first five years of the term the monthly rental payments are set at $650.00; for the subsequent five years, $675.00 per month. Mrs. Sterling said she told the parties that the monthly charges for utilities on the premises subject to lease approximated $300.00. She further stated that her monthly obligation on a mortgage on the premises amounted to $374.00. It is apparent that the total of the monthly utilities ($300.00) plus monthly mortgage payment ($374.00) exceeds the total of the monthly rental receipts ($650.00) to Mrs. Sterling if she is required, as urged by the appellants, to pay the utilities. This situation is an economic advantage to the appellants and an economic detriment to the appellees that was not the bargain the parties made, according to the jury findings in special issues numbered 1 and 2.

The record further reflects that the matter of who would pay the utilities was subject to discussion and negotiation prior to July 26th and that utilities were mentioned and an agreement made on July 26th that the appellants (lessees) should pay the utilities. No further discussion or mention was made regarding the utilities between the parties before the time of, or at the time of, the execution of the lease on August 2nd. Any assumption that, if the agreement was to be changed regarding who was to pay the utilities, there would be no mention by the appellants at the August 2nd meeting of approximately one-

half change in the monthly rental payments ($650.00–$300.00) does not comport with human experience. The appellants considered the change either a windfall to them (a bargain they did not make) or a mistake of the appellees. This conduct, of not mentioning the change, on the part of the appellants was "inequitable conduct" set forth in *Conn,* supra, or "such inequitable conduct as to amount to fraud" as stated at page 946 of *Warren,* supra. The judgment of reformation by the trial court can be sustained on this ground of "inequitable conduct" and we so hold.

■ There is yet another ground which upholds the action of the trial court in ordering reformation. The jury found (special issue no. 5) that the appellants knew, at the time of the execution of the lease on August 2nd, that the lease agreement contained the provision requiring the "lessor" to pay the utilities. They further found (special issue no. 7) that the lease agreement executed on August 2nd failed to correctly set out the previous agreement of the parties with respect to who was to pay the utilities. These findings are tantamount to a finding that the appellants knew that the appellees were mistaken and such knowledge is *equivalent to mutual mistake. Warren,* supra, at page 946. See Automobile Ins. Co. v. United Elec. Serv. Co., 275 S.W.2d 833 (Tex.Civ.App.—Fort Worth 1955, n. r. e.); 3 Pomeroy, Equity Jurisprudence, 5th ed. 1941, § 870a; Williston on Contracts, 3rd ed. 1970, §§ 1548 and 1557; Restatement, Contracts, § 505. We so hold. Appellants' points numbered 3, 10 and 11 are overruled.

■ Next, in their points numbered 2, 7, 8 and 9, the appellants contend that the "mistake", if any, in the lease was the result of negligence of appellees and that the appellees had knowledge, or access to knowledge, equal to that of the appellants. Thus, they say, the trial court erred in entering a judgment of reformation. First, there were no jury findings made that the appellees were negligent, unless the negligence of their attorney, found by the jury, is imputed to the appellees. Nevertheless, negligence of the complaining party where there is mutual mistake or fraud on the part of the other party will not preclude reformation. Kelley v. Ward, 94 Tex. 289, 60 S.W. 311, 313 (1901). See 49 Tex.Jur. 2d Reformation of Instruments, §§ 38 and 39 (1963); Restatement, Contracts, § 508. In view of our holdings above that appellants' conduct was "equivalent to mutual mistake" and "such conduct as to amount to fraud" we further hold that any negligence or "equal access to knowledge" of the appellees, under the circumstances of this case, will not bar recovery. Appellants' points numbered 2, 7, 8 and 9 are overruled.

■■ Further, the appellants assert in their points numbered 4 and 5 that the trial court erred in granting a judgment of reformation based upon "a mistake by accident" because of the lack of proper pleadings by the appellees and because the jury's finding (special issue no. 10) relative to "accident" is against the great weight and preponderance of the evidence. The trial court in the judgment did include a recital: "And the Court finding . . . that said lease agreement incorporated a *mistake by accident,* the court is of the opinion and finds that judgment should be rendered . . ., reforming the lease agreement . . .". (Emphasis supplied.) If such be error, then it is harmless error. Rule 434, Texas Rules of Civil Procedure. If a correct decision is made by a trial court in its judgment, then assignment by the trial court of a wrong reason for granting such judgment is not reversible error. We have heretofore pointed out reasons why, in the case at bar, the judgment of reformation by the trial court should be upheld. We overrule appellants' points numbered 4 and 5.

The judgment of the trial court is affirmed.