## LANE ET AL. *v.* TAYLOR ET AL.

PRACTICE.—*Jurisdiction.—Motion.—Bill of Exceptions.* — If the question of want of jurisdiction can be raised by a motion to transfer a cause for that reason, still the motion must be made a part of the record by bill of exceptions.

SAME.—*Waiver.—Demurrer.—Assignment of Error.* — Although a want of jurisdiction is not waived by failure to demur, still it must be assigned as error upon the record on appeal.

GUARDIAN.—*Improvement of Wife's Land by Husband.—Improvement by Co-Tenant and by Guardian.—Purchase by Guardian.*—Where a father had himself appointed guardian of the persons and estates of his children, after the death of their mother, and filed a claim for improvements made upon their lands, and the improvements were appraised by persons appointed by the court, and their value allowed without other proof, and the land was ordered to be sold upon a defective application, at private sale without notice, to pay for such improvements, and was purchased by the surety on the bond of the guardian, and subsequently a bond was given by him to convey the property to the guardian, and in a proceeding to have the sale set aside, it was proved that much of the improvements were made during the lifetime of the children's mother, who was the owner of the land and the wife of the guardian, and when the other improvements were made, the guardian was the owner of an undivided. eighth part thereof, and a tenant in common with his children and wards;

- *Held,* that if the husband expended money on the grounds belonging to his wife, while he occupied them, it must be presumed that he improved for her benefit, and he could not recover therefor, nor could he improve the property and charge his co-tenants or his wards with the expense.

*Held,* also, that as the proof showed the sale and purchase to have been made for the benefit of the guardian, it was fraudulent and void.

APPEAL from the Madison Common Pleas.

BUSKIRK, J.—This was an action by the appellees against the appellants, to set aside, upon the grounds of fraud and irregularity in the proceedings, a sale of certain real estate belonging to the appellees, made by the appellant Lane, as guardian of the appellees, to his co-appellant Beckwith, to recover for the use and occupation of such real estate, and to compel an accounting by the said Lane as the guardian of the persons and estates of the appellees.

The complaint was in two paragraphs. The appellants demurred separately to each paragraph for the want of sufficient facts. The demurrers were overruled, and the appellants excepted.

The appellants then moved the court to transfer said cause to the circuit court of said county, for the reason that the title to the real estate was involved, which deprived the common pleas court of jurisdiction of such cause. The motion was overruled, and the appellants excepted.

The appellants then answered by the general denial. The cause was submitted to the court for trial, a jury having been waived. There was a finding for the appellees. The appellants' motion for a new trial was overruled, and proper exceptions were taken.

The appellants have assigned for error the overruling of the demurrer to the complaint, the refusal to transfer the cause to the circuit court, and the overruling of the motion for a new trial.

It is admitted by counsel for appellants, in their brief, that the facts alleged in the complaint were sufficient to constitute a cause of action, if they were true. The demurrer admitted the truth of all the facts properly pleaded. The concession of counsel is regarded as a waiver of the error assigned.

The second assignment of error is based upon the action of the court in refusing to transfer the cause to the circuit

Lane *et al. v.* Taylor *et al.*

court. It is earnestly maintained by the appellees, that the question of the jurisdiction of the court below is not presented by the record. It is provided by section eleven of the act creating the common pleas court, as amended by the act of March 5th, 1859, "When it appears upon the face of the complaint or by other legitimate pleadings verified by affidavit, that the title to real estate is in issue in the common pleas court of any county, the cause, with the papers, and a transcript of the entries of record shall be transferred to the circuit court of the same county, and there stand for trial at the first term after the transfer, as if originally commenced therein." 2 G. & H. 22.

The failure of the court below to transfer the cause to the circuit court is not assigned for error in this court. It is provided by section fifty of the code, that the defendant may demur to the complaint when it appears on the face thereof that the court has no jurisdiction of the person of the defendant or of the subject of the action. 2 G. & H. 77.

If the want of jurisdiction does not appear upon the face of the complaint, the objection may be taken by answer. But the failure to raise the question by demurrer or answer will not be deemed a waiver of the jurisdiction of the court over the subject of the action, and the question of the want of jurisdiction over the subject of the action may be presented for the first time in this court. But to raise the question here, it must be assigned for error that the court below did not possess jurisdiction over the subject of the action.

But it is insisted that under section 11, above quoted, the want of jurisdiction need not be taken by demurrer, but may be presented to the court below by a motion to transfer the cause to the circuit court. Conceding, but not deciding, that a mere motion was sufficient, the motion and the ruling of the court thereon must be made a part of the record before any question is presented for review here. It does not sufficiently appear in this case that any such motion was made. There is no bill of exceptions containing the motion

and the ruling of the court thereon. The clerk does not even copy the motion into the transcript, but recites that such a motion was made, overruled, and excepted to. The clerk cannot thus make a record. It is provided by section 559 of the code, that motions and affidavits shall not constitute a part of the record, and shall not be certified, unless made so by exception or order of the court. 2 G. & H. 273.

We are very clearly of opinion that no question is presented in this court as to the jurisdiction of the court below over the subject-matter of the action. This leaves for our consideration the question of whether the court erred in overruling the motion for a new trial.

The premises in dispute were devised by Ephraim Gentry to his daughter, Hanna Lane, the first wife of the appellant Lane and the mother of the appellees, for and during her life, and upon her death the remainder in fee was to vest in her children. The said Gentry also devised to the appellant Lane the sum of two hundred and fifty dollars. He further provided in his will, that whatever personal estate remained at the death of his wife should be sold and the proceeds divided among his children, or the descendants of such as might be dead. The facts, as they were shown upon the trial, were substantially these:

After the making of the above devise, Lane and his wife moved upon the premises in controversy. With the money devised from his father-in-law he erected a house and made other improvements. He leased some ground and had it cleared and fenced before the death of his wife. His wife died, leaving four children. Soon after the death of Mrs. Lane, her youngest child died. In a short time after the death of Mrs. Lane, the three surviving children left home and lived about from place to place. The cause of their leaving home does not very clearly appear, but none of them ever returned home to live. The appellant Lane had himself appointed the guardian of the persons and estates of his children. Lane continued to reside upon the farm which be-

longed to his children.   He made, and caused to be made, considerable improvements upon the farm, by having it cleared and fenced.

The most of the improvements were made by persons to whom he gave leases, and such improvements were paid for by the use and occupation of the lands which had been cleared and fenced.   The appellant received and appropriated to his own use all the products and rents of said farm, while he paid the taxes with money belonging to his wards, derived from the estate of their grandmother, for which sums he asked and obtained credit in his settlement as guardian. The appellant filed in the court of common pleas a claim against the estate of his children and wards in the sum of one thousand dollars for improvements made upon the lands in dispute.   By some process unknown to the law, and we trust not practised elsewhere, the court appointed Thomas L. Beckwith and Gideon Richmond to appraise the value of said improvements, who reported that, in their opinion, they were of the value of one thousand dollars.   The court, upon such report, allowed the said sum of one thousand dollars, and rendered judgment therefor.   There does not seem to have been any other evidence heard as to the making of the improvements or their value.   There was no person appointed by the court to represent the interests of the minors and to guard and protect them from such legalized robbery. The appellant, having obtained an unjust and fraudulent judgment against his own children and wards, makes haste to avail himself of the advantages thus obtained, and as guardian he filed a petition in court, asking for an order for the sale of the lands of his wards, for the purpose of realizing money with which to pay and discharge such allowance. The petition was wholly defective and insufficient.   It lacked six of the statutory requirements.

It did not show the following facts: first, the value and character of all personal estate belonging to his wards that had come to the knowledge or possession of such guardian; second, the disposition made of such personal estate; third,

the amount and condition of the wards' personal estate, if any, dependent upon the settlement of any estate, or the execution of any trust; fourth, the annual value of the real estate of the wards; fifth, the amount of rent received, and the application thereof; sixth, the ages of the wards, where and with whom residing.   2 G. & H. 570.

The omission of these averments, imperatively required by the statute, was overlooked, and the court appointed Thomas L. Beckwith and Gideon Richmond to appraise said lands. The land was appraised at fifteen hundred and seventy-five dollars in cash.   The guardian then executed an additional bond in the sum of two thousand dollars, with the aforesaid Beckwith as his surety.   The statute requires a bond in double the appraised value of the property, and should have been in the sum of three thousand one hundred and fifty dollars; but the bond was approved by the court.

The court then made an order, directing the guardian to sell the said lands at private sale, without requiring any notice of the time, place, or terms of the sale.

At the next term of the court, the guardian reported that he had sold the said premises to the aforesaid Thomas L. Beckwith, for the sum of one thousand five hundred and eighty dollars.   The court confirmed the sale, and ordered the guardian to execute a deed to such purchaser.   The guardian executed a deed to the said purchaser, without in any manner securing the purchase-money.   The guardian continued to occupy, use, and control the farm after the sale, the same as he had previous thereto.   Beckwith never had the possession of the premises.   In about nine months after the said pretended sale, Beckwith executed to the appellant a bond, conditioned to make him a deed for such lands. The guardian accounted to the court for the residue of the purchase-money, after paying the principal and interest of his allowance, and now claims to be the absolute owner in fee of the said premises.

We are now asked by counsel for appellant to reverse the judgment below upon the evidence.   It is earnestly main-

tained that it was not shown upon the trial that the sale was fraudulent. We do not think so. In our opinion, the entire transaction was tainted with the grossest fraud and bad faith. The claim filed by the guardian for the improvements was illegal and fraudulent. It was shown upon the trial that much of the improvements for which he claimed had been made during the lifetime of his wife, who was then the owner of the lands; and when the other improvements were made, the guardian was the owner of one undivided eighth part thereof, and thus became a tenant in common with his children. The appellant had no valid or legal claim for the improvements made while his wife owned and occupied the premises.

Washburn, in his work on real estate, states the law thus: "If the husband expend money upon the lands of his wife in his occupation, by erecting buildings or making improvements thereon, the law will presume he intended it for her benefit, and he cannot recover for the same." 1 Washb. Real Prop. 281, sec. 20.

Nor had he any right to make improvements upon property held in common, and compel his co-tenants to pay therefor. Washburn states the law as follows:

"The law, independent of statute, as to the making of improvements or repairs upon common property, if either co-tenant is unwilling to join in the same, seems to be this. One tenant in common cannot go on and make improvements, erect buildings, and the like, on the common property, and make his co-tenant liable for any part of the same, nor has he a right to hold and use these to the exclusion of his co-tenants." 1 Washb. Real Prop. 421, sec. 17.

Nor did the appellant, as the guardian of the appellees, possess the power to make such improvements and thereby create a claim against their estate. Whether the court possessed the power to make such an order is not before us, and we decide nothing on that point. It is very certain that the guardian had no such right without the authority of the court. *Hassard* v. *Rowe,* 11 Barb. 22.

It seems to us, from all the facts and circumstances detailed in the evidence, that Beckwith was not a purchaser in good faith and for a valuable consideration. Beckwith testified as a witness, upon the trial of the cause, as follows: "It was understood between Lane and me, if Lane paid me what he owed me, and paid the children the price of the land, he was to have it; we had no previous contract about it; it was at the time of the sale and purchase by me that the contract was made."

The appellant denied that there was any such understanding or agreement before or at the time of the sale, but all the other evidence and circumstances in the case very strongly tended to contradict his testimony. We think the court below was fully justified in believing the testimony of Beckwith, who seems to have testified with a considerable degree of candor and truth, which makes some atonement for his part of the transaction. It was clearly and conclusively proved on the trial that Beckwith never paid the appellant any part of the purchase-money; that the appellant never surrendered the possession of the premises; that Beckwith, subsequent to his purchase, obligated himself to convey the lands to the appellant; that the appellant never paid Beckwith anything for the land, but paid him something on his previous indebtedness, just how much is not very clearly shown.

But it is earnestly maintained by the learned counsel for appellants that the court was not justified by the evidence in finding that the sale by the guardian to Beckwith was fraudulent and intended to inure to the benefit of the guardian, and we are reminded of the rule, that "fraud is never to be presumed, but must be clearly proved."

The Supreme Court of Pennsylvania, in the case of *Devall* v. *Burbridge*, 6 Watts & S. 529, states, with accuracy and fulness, the law in reference to the proof of fraud. The court say: "The expresssion that 'fraud is never to be presumed, but must be proved,' though often used when addressed to a jury, has led to much individual injury, and

Lane *et al. v.* Taylor *et al.*

when it is added, 'and the proof must be clear and satisfactory,' it is calculated to mislead many jurors. They understand it that the proof must be direct, and by witnesses who were present and heard the dishonest action planned, and saw it carried into effect. Such a case seldom occurs. The design is kept secret, and the fraud is proved from circumstances. To be sure, it is not to be inferred from slight grounds. Murder is not proved in one case in ten by witnesses who saw the person slain, and yet the murderer seldom escapes punishment. If facts and circumstances are proved which could not have happened if the accused was innocent, the jury convicts. Theft is always secret, yet the thief is convicted on proof which satisfies the jury that he stole. The fraudulent man seldom tells his plan or consults any but his partners in the fraud as to the mode of effecting it, yet a jury may find there was fraud, even if the secret partners are called as witnesses, and swear there was no fraud. But this is not to be done lightly. Everything proved, and all fair inferences from what has been proven, are to be carefully considered and weighed; the verdict ought to be the result of full conviction, and it would be well that a judge should explain this, that fraud is not to be presumed, but proved, so as that it will not mislead."

We are most thoroughly satisfied, from the evidence in the record, which we have duly considered and carefully weighed, that the sale made by the guardian of the lands in question, to Beckwith was not an honest and *bona fide* sale, but was really intended to inure to the benefit of the guardian. The pretended sale to Beckwith was a fraudulent pretext, which was resorted to for the purpose of evading the settled rules of law and equity, that no person can unite the two opposite characters of buyer and seller, and that a person acting in a fiduciary capacity cannot make a profit to himself out of the means or property of those for whom he acts. No person can be permitted to purchase an interest in property, where he has a duty to perform, which is inconsistent with the character of a purchaser. The principle is well set forth by

the Supreme Court of the United States, in the case of *Michoud* v. *Girod*, 4 How. 503.

"The general rule," said the court, "stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between *self-interest* and integrity. It restrains all agents, public and private; but the value of the prohibition is most felt, and its application is most frequent, in the private relations in which the vendor and purchaser may stand toward each other. The disability to purchase is a consequence of that relation between them which imposes on the one a duty to protect the interest of the other, from the faithful discharge of which duty his own personal interest may withdraw him. In this conflict of interest, the law wisely interposes. It acts not on the possibility that in some cases the sense of that duty may prevail over the motives to self-interest, but it provides against the probability in many cases, and the danger in all cases, that the dictates of self-interest will exercise a predominant influence, and supersede that of duty. It therefore prohibits a party from purchasing on his own account that which his duty or trust requires him to sell on account of another, and from purchasing on account of another that which he sells on his own account. In effect, he is not allowed to unite the two opposite characters of buyer and seller, because his interests, when he is the seller or buyer on his own account, are directly conflicting with those of the person on whose account he buys or sells."

The appellant acted in a two-fold relation, in each of which the utmost good faith and the strictest integrity were required. He was not only the guardian under the law, but he was the father and natural guardian of the appellees, and should have been their protector and defender. "The relation of parent and child is one of affection and confidence; and the influence which the parent naturally has over the child may be abused; although it is to be presumed that parental affection, in all cases, is superior to selfish considerations. Yet courts of justice have been obliged to watch

over the interests of children, to protect them from parental overreaching." Tif. &. B. Tr. 132.

"The relation existing between guardian and ward is such, that the principles of a sound public policy require a close and rigid supervision, on the part of courts of equity, of all gifts or conveyances to the guardian by his ward, on coming of age. The case is much stronger for relief than is that of parent and child; because the guardian is not supposed to be under the influence of that affection for his ward which the parent has for his child; and, consequently, has not that check upon his selfish feelings. The court acts upon the broad principle of public utility, for the purpose of discouraging all such transactions; and will relieve against them, although in the particular instance, there be no actual unfairness or imposition." Tif. & B. Tr. 134.

We have arrived at the solemn conviction, from a very careful and mature examination of all the facts and circumstances in the case, that the appellant has been guilty of the grossest fraud and the most flagrant violation of his duties of a father and natural guardian and protector of his children, and of a guardian, under the law, of his wards. Infants are peculiarly entitled to the favor and protection of the courts, and their rights and interests should be zealously guarded and protected from all unfair and unconscionable acts and overreachings of those who are entrusted, either by the laws of nature or of the state, with the management of their property, interests, and rights.

The proceedings upon a guardian's petition for the sale of the real estate of his ward are *ex parte* in their character, and hence a suit will not lie by the ward to review a judgment rendered thereon. The wards are not parties to the proceedings. They are not required to be notified. They have no attorney in court to watch over and protect their rights. They cannot even appeal to this court from an order of sale of their real estate. They are left completely at the mercy of an unconscionable and dishonest guardian. This failure of the legislature to guard and protect their

rights and interests imposes a weighty responsibility upon the courts, and should increase their jealous watchfulness, and should induce them to apply the strictest and most rigid rules to the transactions between them and their guardians, and should demand and require of guardians the utmost fairness, good faith, and unbending integrity in all of their transactions which, in any manner, affect the rights and interests of their wards.

The conclusion at which we have arrived renders it unnecessary for us to examine the questions of irregularity in the proceedings of the court in relation to the sale of the lands in controversy.

The judgment is affirmed, with costs and ten per cent. damages on the judgment for money.

*J. W. Sansberry* and *E. B. Goodykoonts*, for appellants.

*J. T. Smith*, *C. D. Thompson*, and *J. A. Harrison*, for appellees.

