# Supreme Court of Judicature

OF THE

## STATE OF INDIANA,

### AT INDIANAPOLIS, MAY TERM, 1894, IN THE SEVENTY-EIGHTH YEAR OF THE STATE.

———————◆———————

No. 16,790.

PARISH ET AL. *v.* CAMPLIN ET AL.

REFORMATION OF INSTRUMENT.—*Deed.*—*Description.*—*Mistake of Fact.* —*Married Woman.*—Where, by inadvertence of the scrivener in the preparation of a deed, and by mutual mistake of all the parties thereto at the time of the execution thereof, the description of the premises conveyed was erroneously stated as the "undivided three-fifths," while the description intended and believed by the parties at the time of the execution of the deed to be duly stated therein was "the undivided four-fifths," the deed may be reformed so as to express the mutual intentions of the parties, even though such relief be sought against a married woman.

SAME.—*Mistake of Fact.*—*Deed.*—*Description.*—Even if the parties knew that the deed read "three-fifths" instead of "four-fifths," it constitutes a mistake of fact, and not a mistake of law, if the parties really thought the deed sufficient to convey the "four-fifths," and would entitle the plaintiff to a reformation in that respect.

SAME.—*Mistake of Fact.*—*Mistake of Law.*—*Relief.*—*Deed.*—*Omission of Grantor's Name from Body of.*—Equity requires such amendment of a writing (a deed) as will make the contract (the conveyance) what the parties supposed it was, and intended it should be, whether the mistake be one of law or of fact. So, where one of the grantors, a married woman, and her husband, joined in the execution of the deed, but their names do not ·appear in the body thereof, and appear only where they signed it and in the certificate of acknowledgment by the notary, the deed should be reformed so as to express the mutual intentions of all the parties.

Parish *et al. v.* Camplin *et al.*

PARTITION.—*Tenants in Common.*—*Valuable Improvements.*—*When Entitled to Compensation.*—Where one tenant in common makes necessary, valuable and lasting improvements, he is entitled to compensation therefor, on partition.

From the Hendricks Circuit Court.

*J. A. Abbott, J. G. Miles* and *E. A. Miles,* for appellants.

*M. W. Hopkins,* for appellees.

McCABE, J.—The appellants sued the appellees for partition of certain lands in Boone county.

The venue of the cause was changed to Hendricks county. After overruling a demurrer to the cross-complaint, and issues thereon and on the complaint were formed, the cause was submitted to the court for trial without a jury, and the court, on proper request, made a special finding of the facts, and stated its conclusions of law thereon.

The court rendered judgment on the finding over a motion by appellants Francis M. Parish and Mary M. Goodwine, for judgment in their favor on the special finding, over a motion by them for a new trial.

The errors assigned call in question the conclusions of law and the other rulings mentioned.

The substance of the special finding is as follows:

1st. That in the year 1846, George Parish died intestate in Boone county, Indiana, the owner, in fee-simple, of 120 acres of land in said county, of which the land in controversy was a part, and which last mentioned land had been assigned to his widow as dower.

2d. That said George left surviving him his widow, Eliza Parish, and six children, to wit: Francis M., Emily E., Mary M., Thomas, Malinda J., and John H. Parish, his only heirs at law. Emily E. afterwards married, and is now the wife of James W. Kersey. Mary

M. afterwards married Moses F. Goodwine. Malinda J. afterwards married the defendant Joseph H. Camplin, and, on the 20th day of April, 1879, died intestate, without issue, leaving her said husband her only heir. Said Thomas Parish died intestate, without issue, and leaving no widow, in the year 1863. Said Eliza Parish died on the 4th day of August, 1890, intestate. Said other children of George Parish are living, and parties herein.

3d. That in the spring of the year 1871, about the time of his marriage with Malinda J. Parish, the defendant Joseph H. Camplin entered into an agreement with Eliza Parish and the then living heirs of George Parish, who were all of full age and competent to contract, to live upon the tract of land above described, and thereon provide a home for said Eliza Parish during her natural life; that not desiring to remain on said land and improve the same without having title thereto, he so informed said heirs, and because of said agreement and the further consideration of $150 to be paid to each of said heirs, they each one acting separately for himself or herself, agreed, in parol, to convey to him all their respective interests in said real estate, he, the said Camplin, to procure the necessary deeds of conveyance and pay the expense in the execution thereof. The said Mary M. Goodwine being, at the time of said agreement, and ever since, a married woman and a resident of the State of Missouri. The agreement among said children to convey to Camplin embraced no agreement on the part of the widow, Eliza Parish, to part with any interest she had in the land, but it was at the time believed by her and each of said children and Camplin, that she had no interest in said land beyond a life estate.

4th. That in February, 1872, said Camplin, pursuant to said agreement, procured one Davis, a notary public, to prepare a deed of conveyance, and gave said Davis the

names of all the grantors, to wit: Francis M. Parish and wife, Almira; Emily E. Kersey and husband, James W.; John H. Parish and wife, Mary; Mary M. Goodwine and husband, Moses F., which deed recites in the body thereof that Francis M. Parish and Elmira, his wife; Emily E. Kersey and James W. her husband, and John H. Parish and Mary, his wife, in consideration of $450, convey and warrant to Joseph H. Camplin the undivided three-fifths of the northwest quarter of the northwest quarter of section 2 in township 18 north and range 1 west containing $41\frac{72}{100}$ acres, more or less. Mary M. Goodwine and Moses F. Goodwine, her husband, were not named in the body of said deed. The persons named in the body of said deed as grantors duly signed and acknowledged the execution thereof, and delivered the same to Camplin on the 7th day of February, 1872, and at the time of delivery each of the three children named as grantors received from Camplin $150, the consideration theretofore agreed upon; that none of said grantors had anything to do with the preparation of said deed or any knowledge as to its contents until they were called upon to execute it, but each of them voluntarily executed the same without objection and in pursuance of said verbal agreement theretofore made, and each intending thereby to convey all his or her interest in said $41\frac{72}{100}$ acres, which, at the time, each believed, and Camplin also believed, was an undivided one-fifth thereof, subject only to the life estate of Eliza Parish, said deed being in the words and figures following, to wit: "This indenture witnesseth, that Francis M. Parish and Almira, his wife; Emily E. Kersey and James W. Kersey, her husband, and John H. Parish and Mary Parish, his wife, of Boone county, in the State of Indiana, convey and warrant to Joseph H. Camplin, of Boone county, in the State of Indiana, for the sum of four hundred and

fifty dollars, the following real estate in —— county, State of Indiana, to wit: the undivided three-fifths of the northwest quarter of the northwest quarter of section two (2), in township eighteen (18) north, of range one (1) west, containing $41\frac{72}{100}$ acres more or less.

"In witness whereof the said Francis M. Parish and Almira Parish, his wife; Emily E. Kersey and James W. Kersey, her husband; John H. Parish and Mary Parish, his wife, have hereunto set their hands and seals, this seventh day of February, A. D. 1872.

"FRANCIS M. PARISH    (Seal).
"ALMIRA PARISH       (Seal).
"EMILY E. KERSEY      (Seal).
"JAMES W. KERSEY      (Seal).
"JOHN H. PARISH       (Seal).
"MARY E. PARISH       (Seal).
"MARY M. GOODWINE    (Seal).
"MOSES F. GOODWINE   (Seal)."

Then follows a certificate of acknowledgment taken by Francis M. Davis, a notary public in and for said Boone county, on the part of all the foregoing parties except Mary M. Goodwine and Moses F. Goodwine, showing the relation of husband and wife, dated the same day. And then follows another certificate of acknowledgment taken by Solomon Witt, a justice of the peace in and for said county, dated August 21st, 1872, on part of Mary E. Parish, wife of John H. Parish.

Then follows another certificate of acknowledgment on part of Moses F. Goodwine and Mary M. Goodwine, his wife, taken by the county clerk of Clark county, Missouri, on the 12th day of October, 1874.

4th. That at the time of the execution of said deed, on the 7th day of February, 1872, by Francis M. Parish and wife, John H. Parish and wife, and Emily E. Kersey and husband, as heretofore found, Mary M. Goodwine re-

sided, and still resides, with her husband in the State of
Missouri; that in 1874 said Camplin, having procured
the money with which to pay Mrs. Goodwine, did pay
her $150, the consideration agreed upon in 1872, as be-
fore found, for her interest in said $41\frac{72}{100}$ acres, and also
further paid her $8 as interest for the delay of the $150,
and sent to Mrs. Goodwine, in Missouri, the deed exe-
cuted by her brothers and sisters, as before found, with
instructions for her and her husband to sign and ac-
knowledge that deed or execute a separate deed convey-
ing her interest in said $41\frac{72}{100}$ acres to Camplin; that
Mrs. Goodwine and her husband, Moses F. Goodwine,
signed and acknowledged said deed, as parties thereto,
before the clerk of the county court of Clark county,
Missouri, on the 12th day of October, 1874, and returned
and delivered the same to the said Camplin, who caused
the same to be recorded in deed record No. 28  *  *  in
the office of the recorder of Boone county, Ind., on the
11th day of November, 1878.

5th. That at the time Mrs. Goodwine and her hus-
band signed and acknowledged said old deed, and at no
other time was her name and the name of her husband,
nor either of them, written in the body of said deed as
grantors, nor was there any change made in the descrip-
tion of the premises or quantity conveyed, but they both,
by the signing and acknowledging and delivering of said
deed to Camplin, intended thereby to convey to him,
Camplin, all the interest of said Mary M. Goodwine in
the said $41\frac{72}{100}$ acres, which interest the said Goodwine
and also the said Camplin at the time believed was an
undivided one-fifth thereof, subject only to the life estate
of the said Eliza Parish, and which deed at the time of
signing, acknowledging, and delivering of the same, the
said Goodwines and the said Camplin understood and be-
lieved was duly executed, to sufficiently and fully carry

out their purpose as a conveyance of title with full covenants, to an undivided one-fifth of said $41\frac{72}{100}$ acres.

6th. That by inadvertence of the scrivener in the preparation of said deed, and the mutual mistake of all the parties in the execution thereof, the names of Mary M. Goodwine and Moses F. Goodwine were omitted, as grantors, in the body of said deed. And, by the further inadvertence of the scrivener in the preparation of said deed and the mutual mistake of all the parties thereto, at the time of the execution thereof, the description of the premises conveyed was erroneously stated as the undivided three-fifths * * *, while the description of the premises intended and believed by the parties, at the time of its execution, to be duly stated in said deed, was as follows: "The undivided four-fifths of the northwest quarter of the northwest quarter of section 2, in township 18 north, of range 1 west, containing $41\frac{72}{100}$ acres, more or less."

7th. That from March, 1871, till February, 1880, said Camplin continued to live upon said real estate. In April, 1879, his wife died, and in November, 1879, the widow, Eliza Parish, gave him a written notice to quit possession of said real estate, and, in compliance with said notice, he yielded possession of said $41\frac{72}{100}$ acres to the widow, in February, 1880; that upon the death of the widow, August 4, 1890, the said Camplin took possession of said land, and has continuously since held the possession thereof, under claim of absolute ownership.

8th. That while occupying said land, and before the death of the widow, the defendant Camplin made necessary, lasting, and valuable improvements on said land, of the present value of $440.

9th. That in 1873 the Anderson, Lebanon and St. Louis R. R. was located and graded through said land, and

Camplin received from the owners of said railroad $225 as damages to said tract of land.

10th. That said tract of land is not susceptible of partition without material injury to the same.

The foregoing facts are all within the issues formed on the complaint and cross-complaint.

The conclusions of law are as follows:

"1st. That the defendant, Joseph H. Camplin, on his cross-complaint, is entitled to have the deed described in his cross-complaint reformed, so as to duly and sufficiently show a conveyance to him with full covenants of warranty from Francis M. Parish and Almira Parish his wife, Emily E. Kersey and James W. Kersey her husband, John H. Parish and Mary Parish his wife, Mary M. Goodwine and Moses F. Goodwine her husband, of the real estate, as intended by all the parties above described, so as to convey the undivided four-fifths thereof to him.

"2d. That the plaintiffs, Francis M. Parish and Mary M. Goodwine, and the defendants, Joseph H. Camplin, John H. Parish and Emily E. Kersey, are the owners in fee and tenants in common of the lands described in the complaint.

"3d. That the plaintiffs, Francis M. Parish and Mary M. Goodwine, and the defendants, John H. Parish and Emily E. Kersey, are each the owners and entitled to a share in said real estate equal in value to $\frac{1}{240}$ part thereof, and the defendant, Joseph H. Camplin, is the owner and entitled to a share of the same equal in value to $\frac{236}{240}$ parts thereof.

"4th. That said defendant Camplin is entitled to a lien on said real estate for the sum of $440, less $225, received by him from the railroad company as damages in railroad construction, for necessary, lasting and valuable improvements placed by him on said real estate.

"5th. That the defendant Camplin is not entitled to have his title quieted on his cross-complaint.

"6th. That there ought to be a commissioner appointed to sell said real estate."

The same question involved in the action of the court in overruling the demurrer to the cross-complaint is involved in the exceptions to the conclusions of law.

It is therefore unnecessary to inquire into the correctness of the ruling of the court in overruling the demurrer to the cross-complaint, especially as the appellants' counsel admit that the cross-complaint makes a stronger case for reformation than the facts found do. *State, ex rel.*, v. *Vogel*, 117 Ind. 188; *Martin* v. *Cauble*, 72 Ind. 67; *Douthit* v. *Douthit*, 133 Ind. 26; *Reddick* v. *Keesling*, 129 Ind. 128.

The principal controversy is over the first conclusion of law stated, to the effect that appellee Camplin is entitled to a reformation of the deed. It is contended by appellants that because the names of Mary M. Goodwine and her husband were left out of the body of the deed, it was no deed at all as to her, and it could not be reformed, and they cite *Cox* v. *Wells*, 7 Blackf. 410, in support of that proposition. It was held in that case, and we think correctly, that a deed tendered under a contract to execute a deed with relinquishment of dower, which did not contain the name of the wife in the body of the deed was insufficient. But there was no claim of mistake in that case, and no attempt at reformation. The other cases cited by appellants have no application here.

It is contended by appellants that the deed of a married woman can not be reformed on account of a mistake, except as to a matter of mere description of the premises intended to be conveyed, and they cite a large number of cases in this court to the effect that equity affords

no relief against such a mistake.    *Hamar* v. *Medsker*, 60 Ind. 413;  *Carper* v. *Munger*,  62 Ind. 481;  *McKay* v. *Wakefield*, 63 Ind. 27;  *Wilson, Admr.*, v. *Stewart*, 63 Ind. 294;  *Baxter* v. *Bodkin*, 25 Ind. 172;  *Shumaker* v. *Johnson*, 35  Ind.  33;  *Behler*  v.  *Weyburn*,  59  Ind.  143;  *Dunn*  v. *Tousey*,  80  Ind.  288;  *Travellers' Ins. Co.* v. *Noland*, 97 Ind.  217.    But none of  these cases holds that a married woman's  deed  can  not  be  reformed for other mistakes than  those of  description of  the  premises intended to be conveyed.

If the deed of a married woman  may be reformed on account  of  a mistake  in the description  of  the premises or estate, or  interest intended  to be conveyed, as is decided in the cases cited, no good reason is perceived why it may not be  reformed as  to  other  mistakes therein. This is not a case like *Baxter* v. *Bodkin*, 25  Ind. 172; *Stevens* v. *Parish*,  29  Ind.  260, and other cases  referred to by appellants' counsel where the defect in the conveyance  sought  to  be cured was the failure of the husband to join in the deed of his wife.    Such a defect can not be cured either by equity or by the voluntary action of  the  husband  in  the  execution of  another  separate deed on his part to the same person for the same premises as those contained in  the wife's  deed.    The reason of this  is  that the statute  provides  that  the "wife shall have no  power to encumber or convey such (her) lands except by deed  in which  her  husband shall join."    3 Burns'  R.  S.  1894, section  6961;  R.  S.  1881, section 5116.    Those cases correctly hold  that  on  account of that statute the separate  deed  of  the wife is absolutely void.    If the instrument is absolutely void, it is as if it never  had  been  written,  or  signed.    In  that case  to reform it would be  to  make  a  deed for her, by a court of equity, that she never made, and no part of  which she ever made.

Here the defect does not arise out of the fact that the attempted conveyance was one which a statute expressly forbids, and renders therefore absolutely void.    The attempted conveyance was in all respects lawful had the contract been carried out without the intervention of a mistake.    It has been held by this court that a mistake in a deed of a married woman may be reformed so as to make it conform to the intention of the parties thereto, and that such reformation is not the making of a new contract by the court for her, which she herself has not made, as contended by appellants.    *Styers* v. *Robbins,* 76 Ind. 547; *Comstock* v. *Coon,* 135 Ind. 640.    The cases on the subject of reformation as to the description of the estate or interest intended to be conveyed, already cited above, fully justify the conclusion of law that the deed ought to be reformed so as to make it a conveyance of the undivided four-fifths.    And even though'the parties may have known that the deed read three-fifths instead of four-fifths, those cases hold that it would constitute a mistake of fact, and not a mistake of law, if the parties really thought the deed sufficient to convey the four-fifths, and would entitle the appellee Camplin to a reformation in that respect.    The finding is that they did all so believe.

But it is contended, with much zeal and ability on behalf of appellants, that the omission of the names of Mary M. Goodwine and her husband from the body of the deed rendered it a mere nullity as to them, and hence there could be no reformation as to them; and to reform the deed in that respect would amount to the making of a contract or deed for Mrs. Goodwine and her husband which they never themselves made.

Many authorities are cited to the effect that the grantor's name must be in the body of the deed, or it will be void.    We do not stop to determine whether that is the

legal effect of leaving out of the body of the deed the name of the grantor or not; if it was competent and proper to reform the deed so that the names of the Goodwines would appear therein, as was done, that is sufficient to uphold the judgment of the trial court.

That question has been settled by this court against appellants, in *Collins* v. *Cornwell*, 131 Ind. 20. In that case a married woman had undertaken to mortgage her real estate for money borrowed by herself. Her husband joined with her in the execution of the mortgage, but his name nowhere appeared in the body thereof, and appeared only where he signed it with his wife and in the certificate of acknowledgment by the notary public, just as in the case at bar. The mortgage was reformed on the ground that the husband's name had been omitted by the mutual mistake of all the parties. See, also, *Calton* v. *Lewis*, 119 Ind. 181.

It is further contended by appellants that if there was any mistake about the omission of the names of Mrs. Goodwine and husband, it was a mistake of law and not of fact, and that, therefore, there can be no reformation as to that matter.

The special finding shows that a valid contract was made by Camplin to purchase the interests of the other four living heirs and tenants in common for $150 apiece; and that appellee Camplin employed a notary public to draw up a deed to convey the four shares of the four heirs whose names, with the wife or husband of each, were furnished with directions to draw up a deed accordingly; that by the mistake of the notary, he only embraced those of the heirs who lived in the vicinity, in the deed, and by a like mistake he omitted the one who lived in Missouri, and also omitted the description of her interest in the real estate, and that the appellee sent the purchase-price of her interest and the deed to Mrs. Good-

wine, in Missouri, with directions for her and her husband to execute a new deed for her interest, or sign and acknowledge the one sent, which latter they did, and returned and delivered it to appellee Camplin, both the Goodwines and Camplin believing that the deed was duly executed so as to sufficiently carry out their purpose to convey to Camplin the undivided one-fifth of Mrs. Goodwine, as well as the other three-fifths of the other three heirs.

But it is contended that there is no finding of fact that the Goodwines and Camplin were all really mistaken as to the names of the Goodwines being in the body of the deed, and that for aught that appears in the special finding, they may have all known that the names of the Goodwines were omitted from the body of the deed, and have believed the deed sufficient to convey Mrs. Goodwine's interest, and that that would be the legal effect of such a deed. If so, that would be a mistake of law against which equity, as a general rule, does not relieve. But our construction of the whole special finding is that the Goodwines and Camplin were all laboring under the mistake that the Goodwines' names were in the body of the deed. The other parties to the deed knew nothing about it so far as it affected the Goodwines. The reformation did not affect any of the other parties to the deed, and hence it was not material whether they did or did not know that the Goodwines' names were not in the body of the deed.

But if we were to construe the special finding to the effect that the Goodwines and Camplin knew that the names of the Goodwines were not in the body of the deed, yet that would not preclude the right to reformation on the ground that their mistake was one purely of law. There are exceptions to the rule that denies relief in equity from a mistake of law.

If this was a mistake of law, a mistake as to the legal effect of the deed, it was such an one as was common to all the parties affected.

"It has been said that whenever a mistake of law is common to all the parties, where they all act under the same misapprehension of the law, and make substantially the same mistake concerning it, this is a sufficient ground, without any other incidents, for the interposition of equity." 2 Pom. Eq. Jur., section 846.

*Eastman* v. *Provident, etc., Ass'n,* 65 N. H. 176, was a suit in equity to reform a certificate of membership in a life insurance association issued to one Gigar. The application for the policy was made to defendant's clerk, who was also one of its trustees, authorized to approve applications. The applicant asked this clerk what would be the effect if no beneficiary were named in the certificate, and on being informed that it would then be payable to his administrator as a part of his estate, replied that was what he desired. The certificate was, therefore, left blank, instead of making it payable to his administrator.

The court said: "Both parties intended to make the benefit payable to Gigar's administrator. That it was not made payable to him was due to their mutual misapprehension of the legal effect of the language used in the certificate." *Eastman* v. *Provident, etc., Ass'n, supra.*

Equity requires an amendment of the writing that will make the contract what the parties supposed it was, and intended it should be, although their mistake is one of law and not of fact. *Eastman* v. *Provident, etc., Ass'n,* 23 Am. St. Rep. 29; *Kennard* v. *George,* 44 N. H. 440; *Stedwell* v. *Anderson,* 21 Conn. 139; *Woodbury Savings Bank* v. *Charter Oak, etc., Ins. Co.,* 31 Conn. 517 (529).

Another qualification of the exception is that: "If a

man, through misapprehension or mistake of the law, parts with or gives up a private right of property or assumes obligations upon grounds upon which he would not have acted but for such misapprehension, a court of equity may grant relief if, under the general circumstances of the case, it is satisfied that the party benefited by the mistake can not, in conscience, retain the benefit or advantage so acquired." *Bales* v. *Hunt*, 77 Ind. 355; Kerr Fraud and Mistake, 398, and notes.

We, therefore, hold that the first conclusion of law was not erroneous, and it follows that there was no error in the second and third conclusions, for their correctness is conceded if the first is correct.

The fourth conclusion of law relates to Camplin's right to compensation for improvements against the other tenants in common. Where one tenant in common makes necessary, valuable and lasting improvements, on partition he is entitled to compensation. *Martindale* v. *Alexander*, 26 Ind. 104; *Elrod* v. *Keller*, 89 Ind. 382; *Lane* v. *Taylor*, 40 Ind. 495.

That is the character of the improvements that the court finds appellee made.

But it is objected that Camplin was not in possession as owner or tenant in common, but as tenant of the life tenant, and the duty of making these improvements as life tenant without compensation against the holders of the fee, or remaindermen was devolved on him by law. It is true the law imposes the duty upon the life tenant to pay the taxes and keep up the repairs, and he can not make improvements at the expense of the remainderman whether necessary or not. *Miller* v. *Shields*, 55 Ind. 71; *Clark* v. *Middlesworth*, 82 Ind. 240.

But the finding shows that the surviving widow and children of George Parish, deceased, in good faith supposed that such widow had and held no other interest in

said real estate than a life estate, and that the five children living at the time appellee Camplin, husband of one of them, bought out the other four, and that Camplin, in good faith, so believed. This supposition was correct up to the time of the death of Thomas Parish, one of the six children left by said George Parish. But, contrary to the belief, in good faith, entertained by all of them, at the death of Thomas Parish, one-half of his one-sixth interest descended to his mother and the other half to his brothers and sisters. 2 Burns' R. S. 1894, section 2624, R. S. 1881, section 2469.

When the improvements were made, the appellee Camplin, and all the parties, believed he had become the owner of all the interests in fee, except his wife's, and in that belief made the improvements, he having at the time, as he thought, secured the life estate of his mother-in-law. On the death of his wife, his mother-in-law ordered him to quit the premises, which he did.

In *Carver* v. *Coffman*, 109 Ind. 547, it was held that a person in possession under a *bona fide* claim of ownership of the entire estate, who made valuable, lasting, and necessary improvements, was entitled to compensation therefor against one who afterwards turned out to be the owner of an undivided interest in the estate. 17 Am. & Eng. Encyc. of Law, 760, 761, and authorities there cited.

We hold, therefore, that there was no error in the fourth conclusion of law. It follows, from what we have already said, that there was no error in overruling appellants' motion for judgment on the special finding in their favor.

It is lastly contended, by the appellants, that the evidence is insufficient to support the finding, and that, therefore, the court erred in overruling the motion for a new trial.

We have examined the evidence, and think it fully warranted the deductions and inferences the court has drawn therefrom, and is sufficient to support the finding; therefore, there was no error in overruling the motion for a new trial.

We find no error in the record, and the judgment is, therefore, affirmed.

Filed May 29, 1894; petition for a rehearing overruled Sept. 25, 1894.