IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00320-CV

 

Joan E. Givens, Shannon Kraus, Gregory 

D. Givens, Individually and as Independent 

Executor of the Estate of William L. Givens, 

J. Harold Sewell, and Alamo Title Company,

 

                                                                                                Appellants

 v.

 

Elvis and DianNa Ward,

                                                                                                Appellees

 

 

 



From the 413th District Court

Johnson County, Texas

Trial Court No. C2005-00331

 



Opinion



 








            Elvis and Dianna Ward purchased a
115-acre tract of land from Joan Givens, Shannon Kraus, and Gregory Givens,
Individually and as Independent Executor of the Estate of William L. Givens
(collectively, the Givenses).  The warranty deed contains no reservation of
mineral interests.  The trial court granted the Wards’ summary-judgment motion
and denied summary-judgment motions filed by the Givenses, Harold Sewell, and
Alamo Title Company.  The primary substantive issues in this appeal are: (1)
whether the Givenses are entitled to reformation of the warranty deed due to
mutual mistake because it does not contain a reservation of the mineral
interests in the property; and (2) whether Sewell and Alamo Title are entitled
to specific enforcement of an agreement the parties signed at closing whereby
the parties agreed “to fully cooperate, adjust, and correct any errors or
omissions and to execute any and all documents needed or necessary to comply
with all provisions of the [real estate contract].”  We will reverse and
remand.

Background

            After a period of negotiations, the
Givenses agreed to sell the 115-acre tract to the Wards for $250,000.  The
sales contract contains the following provision (paragraph 2(F)) regarding the
disputed mineral interests:

F.    RESERVATIONS:  Seller reserves the following
mineral, water, royalty, timber, or other interests:

 

            SEE ATTACHED OIL, GAS, AND MINERAL
LEASE[1]

 

Attached to the sales contract is a 2001 oil and
gas lease from the Givenses in favor of a third party.  In a separate document
entitled “Acceptance of Title and Closing Agreements,” the parties agreed “to
fully cooperate, adjust, and correct any errors or omissions and to execute any
and all documents needed or necessary to comply with all provisions of the [sales
contract].”

            The deed contains no mineral
reservation.  About six months after closing, Alamo contacted the Givenses and
the Wards by letter explaining that the deed erroneously omitted the mineral
reservation and asking the parties to sign a correction deed with the mineral
reservation.  The Wards refused to sign.

            Instead, they filed a declaratory
judgment action against the Givenses seeking a judicial declaration that they
own the disputed mineral interests.  The Givenses filed a general denial,
asserted the affirmative defense of mistake, and counterclaimed for reformation
of the deed due to mistake.  The Wards responded with a traditional motion for
summary judgment contending among other things: (1) the deed is unambiguous,
(2) it cannot be set aside due to unilateral mistake, and (3) there was no
mutual mistake.  The Givenses amended their pleadings to include an additional
counterclaim for breach of the compliance agreement.  Alamo and Sewell then
filed a joint petition in intervention alleging breach of the compliance
agreement and requesting specific performance.  The Givenses followed with an
amended pleading asserting counterclaims: (1) alleging breach of the compliance
agreement; and (2) seeking a judicial declaration that the deed’s conveyance of
the minerals to the Wards is invalid.

            The Givenses then filed a
summary-judgment motion on both counterclaims against the Wards.  Alamo and Sewell filed a joint summary-judgment motion on their breach of contract claims. 
The Wards filed a response to “Defendant’s Motion for Summary Judgment.”[2] 
The Wards argued in their response that the deed is unambiguous, “there are no
legal reasons to reform the deed” because there is no mistake, etc., and thus
they did not breach the compliance agreement.

            The Givenses filed a response to the
Wards’ summary-judgment motion alleging that the Wards failed to conclusively
establish that there was no mutual mistake and requesting that the Wards’
motion be denied.

            Following a hearing, the trial court
signed a “final order” granting the Wards’ summary-judgment motion and denying
the other parties’ summary-judgment motions.

Standard of Review

            We review a trial court’s summary
judgment de novo.  Provident Life & Accident Ins. Co. v. Knott, 128
S.W.3d 211, 215 (Tex. 2003).  In reviewing a summary judgment, we must consider
whether reasonable and fair-minded jurors could differ in their conclusions in
light of all of the evidence presented.  See Goodyear Tire & Rubber Co.
v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) (citing Wal-Mart
Stores, Inc. v. Spates, 186 S.W.3d 566, 568 (Tex. 2006) (per curiam); City
of Keller v. Wilson, 168 S.W.3d 802, 822-24 (Tex. 2005)).  We must consider
all the evidence in the light most favorable to the nonmovant, indulging every
reasonable inference in favor of the nonmovant and resolving any doubts against
the movant.  See Goodyear Tire, 236 S.W.3d at 756 (citing Sudan
v. Sudan, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam); Spates, 186
S.W.3d at 568).

            When competing motions for summary
judgment are filed and some are granted while others denied, the general rule
is that the appellate court should determine all questions presented and render
the judgment the trial court should have rendered.  Tex.

Workers’ Comp. Comm’n v. Patient Advocates of Tex., 136 S.W.3d 643, 648 (Tex. 2004); Am.
Hous. Found. v. Brazos County Appraisal Dist., 166 S.W.3d 885, 887 (Tex. App.—Waco
2005, pet. denied).  This rule applies only when both (or all) parties’ motions
sought a final judgment, namely, relief on all pending claims.  See CU
Lloyds of Tex. v. Feldman, 977 S.W.2d 568, 569 (Tex. 1998) (per curiam); Am.
Hous. Found., 166 S.W.3d at 887; Krishnan v. Law Offices of Preston Henrichson, P.C., 83 S.W.3d 295, 303 (Tex. App.—Corpus Christi 2002, pet.
denied).  However, an appellate court may reverse and remand if resolution of
the pertinent issues rests in disputed facts or if the parties’ motions are premised
on different grounds.  See Sarandos v. Blanton, 25 S.W.3d 811, 814 &
n.5 (Tex. App.—Waco 2000, pet. denied).

Reformation of Deed

            The Givenses contend in their fourth
issue that genuine issues of material fact remain on the question of whether
they are entitled to reformation of the deed.  Sewell raises the same complaint
in his fourth issue.

            “The underlying objective of
reformation is to correct a mutual mistake made in preparing a written
instrument, so that the instrument truly reflects the original agreement
of the parties.”  Cherokee Water Co. v. Forderhause, 741 S.W.2d 377, 379
(Tex. 1987); accord Tribble & Stephens Co. v. RGM Constructors, L.P.,
154 S.W.3d 639, 659 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); Hatch
v. Williams, 110 S.W.3d 516, 522 (Tex. App.—Waco 2003, no pet.).  For
reformation of a written instrument, a party must prove two elements: “(1) an
original agreement and (2) a mutual mistake, made after the original
agreement, in reducing the original agreement to writing.”  Cherokee Water
Co., 741 S.W.2d at 379; accord U.S. Fire Ins. Co. v. Scottsdale Ins. Co.,
No. 05-06-01138-CV, 2008 WL 62561, at *8 (Tex. App.—Dallas Jan. 7, 2008, no
pet. h.); Tribble & Stephens, 154 S.W.3d at 659.

            Here, the Givenses contend that the
requisite mutual mistake consists of their unilateral mistake in signing a deed
which did not conform to the parties’ agreement and the Wards’ knowledge that
the deed did not conform.  “Unilateral mistake by one party, and knowledge of
that mistake by the other party, is equivalent to mutual mistake.”  Davis v. Grammer, 750 S.W.2d 766, 768 (Tex. 1988) (citing Cambridge Cos.
v. Williams, 602 S.W.2d 306, 308 (Tex. Civ. App.—Texarkana 1980), aff’d,
615 S.W.2d 172 (Tex. 1981));[3] accord
 Navasota Res., L.P. v. First Source Tex., Inc., 249 S.W.3d 526, 539 (Tex. App.—Waco 2008, pet. filed); Atlantic Lloyds Ins. Co. v. Butler, 137 S.W.3d 199,
213 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

            The Wards suggest that different
considerations apply when a party seeks reformation of a deed, particularly a
deed which is unambiguous on its face.  As an example, the Wards cite Alvarado
v. Bolton, 749 S.W.2d 47 (Tex. 1988), for the proposition that the merger
doctrine applies and that any contrary language in the real estate contract was
extinguished when the Givenses signed the deed.  In Alvarado, the
Supreme Court described the merger doctrine as follows:

When a deed is delivered and accepted as
performance of a contract to convey, the contract is merged in the deed. 
Though the terms of the deed may vary from those contained in the contract,
still the deed must be looked to alone to determine the rights of the parties.

 

Id. at
48 (quoting Baker v. Baker, 207 S.W.2d 244, 249 (Tex. Civ. App.—San
Antonio 1947, writ ref’d n.r.e.) (quoting 2 Robert
T. Devlin, A Treatise on the Law of Deeds § 850a (2d ed. 1897))).

            Although the Court recited this as a
correct statement of the merger doctrine as it applies to deeds, the Court held
that the merger doctrine did not apply in that case, which was a DTPA suit for
breach of a warranty contained in the parties’ earnest money contract.  Id. (“we hold that the doctrine of merger may not be applied to defeat a cause of
action under the DTPA for breach of an express warranty made in an earnest money
contract and breached by deed”).  And as that Court has previously held, the
merger doctrine applies to deeds only “in the absence of fraud, accident, or
mistake.”  Commercial Bank of Mason v. Satterwhite, 413 S.W.2d 905, 909
(Tex. 1967); accord Geodyne Energy Income Prod. P’ship I-E v. Newton Corp.,
161 S.W.3d 482, 487 (Tex. 2005); Hill v. Spencer & Son, Inc., 973
S.W.2d 772, 775 (Tex. App.—Texarkana 1998, no pet.).

            Moreover, our research has disclosed
numerous decisions involving reformation of a deed.  See, e.g., Davis,
750 S.W.2d at 768; Hatch, 110 S.W.3d at 522; Hill, 973 S.W.2d at
775; Hamberlin v. Longview Bank & Trust Co., 770 S.W.2d 12, 13-14
(Tex. App.—Texarkana 1989, writ denied).  Thus, we reject the Wards’ contention
that the merger doctrine bars the Givenses’ reformation claim.[4]

1.  Original Agreement

            The Givenses’ reformation claim as
pleaded rests on (1) whether the deed varies from the parties’ original
agreement; and (2) whether this variance was a mistake on the Givenses’ part of
which the Wards had knowledge.  Thus, we must first determine what was the
parties’ original agreement.

            As previously stated, the sales
contract contains the following reservation, “Seller reserves the following
mineral, water, royalty, timber, or other interests: SEE ATTACHED OIL, GAS, AND
MINERAL LEASE.”  If this reservation is unambiguous, then extrinsic evidence is
not admissible to interpret it.  See Kelley-Coppedge, Inc. v. Highlands Ins.
Co., 980 S.W.2d 462, 464 (Tex. 1998); Barrand, Inc. v. Whataburger, Inc.,
214 S.W.3d 122, 129 (Tex. App.—Corpus Christi 2006, pet. denied); EMC Mortgage
Corp. v. Davis, 167 S.W.3d 406, 413 (Tex. App.—Austin 2005, pet. denied). 
Conversely, if this reservation is reasonably susceptible to more than one
legal meaning, then it is ambiguous and extrinsic evidence is admissible to
determine its true meaning.  Id.

            Whether a contractual provision is
ambiguous is a question of law for the court.  Id.  In construing a
contract, our primary concern “is to ascertain the true intent of the parties
as expressed in the instrument.  If a written contract is so worded that it can
be given a definite or certain legal meaning, then it is not ambiguous.”  Kelly-Coppedge,
980 S.W.2d at 464 (quoting Nat’l Union Fire Ins. Co. v. CBI Indus., Inc.,
907 S.W.2d 517, 520 (Tex. 1995) (per curiam)); accord Barrand, 214
S.W.3d at 129; EMC Mortgage, 167 S.W.3d at 413.

            The Givenses contend that the quoted
language constitutes a reservation of the entire mineral estate.  The Wards
contend that the provision is ambiguous.  They refer to Appellant Kraus’s
statement in a letter to the realtor who represented the Givenses and the Wards
in this transaction.  Kraus stated that the provision is “ambiguous” and “could
be interpreted to mean that all rights were reserved, that only the rights
under the lease were reserved, or as a simple disclosure that the lease
existed, reserving no rights.”  The Wards also refer to Sewell’s deposition
testimony that he cannot tell from the quoted language “specifically what is
reserved.”

            We agree with the Wards that the
provision is ambiguous.  Therefore, we may consider extraneous evidence to aid
in its interpretation.  See id.  The Givenses refer to evidence of the
parties’ pre-contract negotiations to support their interpretation.  See
Savage v. Doyle, 153 S.W.3d 231, 234 (Tex. App.—Beaumont 2004, no pet.); Baty
v. ProTech Ins. Agency, 63 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.]
2001, pet. denied).  In this regard, the Givenses cite Dianna Ward’s deposition
testimony that the Wards’ initially offered $200,000 for the property with the
minerals.  When the Givenses rejected this offer and countered with an offer to
sell the property without the minerals for $280,000, the Wards responded by
offering $220,000 with half the minerals.  After the Givenses rejected this
offer, the Wards offered $245,000 without the minerals.  Two weeks later, the
parties signed the real estate contract at issue.  Dianna testified that at the
closing she “really didn’t know” if they were purchasing the minerals.

            The Givenses also cite the deposition
testimony of the real estate agent who handled the negotiations.  The agent
testified that at the time of the final offer “the Wards understood they were
not purchasing the mineral rights.”  And at the time they signed the sales
contract, they continued to understand that they were not purchasing the
mineral rights.

            In addition, the Givenses cite
Dianna’s testimony that, after the closing, she “maybe in a hypothetical sense”
posted a message on the website of the National Association of Royalty Owners[5]
to the effect that she “thought that [she] had not purchased the minerals and
evidently there was some—something wrong with the deed.”

            The Wards refer to Appellant Shannon
Kraus’s deposition testimony which the Wards contend indicates that Kraus
“instructed their agent who drafted the contractual language to disclose the
mineral lease to the Wards.”  However, Kraus actually testified that the agent
disclosed the existence of the lease but she never instructed him to do so. 
The Wards also rely on Dianna’s deposition testimony that she interpreted the
contract to mean that the Givenses were only disclosing the existence of the
lease and the Wards were getting the minerals.  Similarly, Elvis Ward provided deposition
testimony that they “really didn’t know” whether they were getting the minerals
but they “had a pretty good speculation” that they were.

            Finally, the Wards refer to a lawsuit
the Givenses filed in a Tarrant County district court against Alamo, Sewell,
and their agent in which they allege, “Unfortunately, the Contract failed to
clearly reserve Plaintiffs’ mineral interest in the Property.”  Although the
Wards do not use the term “judicial admission” when referring to this allegation
in their summary-judgment pleadings or in their brief, such is the only basis
on which pleadings can constitute summary-judgment evidence.  Compare Whittington
v. City of Austin, 174 S.W.3d 889, 900 (Tex. App.—Austin 2005, pet. denied)
(pleadings are not competent summary-judgment evidence), with Beasley v.
Burns, 7 S.W.3d 768, 770 (Tex. App.—Texarkana 1999, pet. denied) (party may
offer pleadings which constitute judicial admissions as summary-judgment
evidence).

            “A judicial admission must be a clear,
deliberate, and unequivocal statement.”  Horizon/CMS Healthcare Corp. v.
Auld, 34 S.W.3d 887, 905 (Tex. 2000) (quoting Regency Advantage Ltd.
P’ship v. Bingo Idea-Watauga, Inc., 936 S.W.2d 275, 278 (Tex. 1996) (per
curiam); Bowen v. Robinson, 227 S.W.3d 86, 92 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  Here, a statement that the contract “failed to clearly
reserve” the mineral interest does not constitute “a clear, deliberate, and
unequivocal statement” that the contract “did not reserve” the mineral
interest.  Thus, the statement in question does not constitute a judicial
admission.  See Bowen, 227 S.W.3d at 92-93.

            However, because the Givenses failed
to object to this evidence, the statement is part of the summary-judgment
record for purposes of our review.  Viewed in the light most favorable to the
non-movants (the Givenses in this instance), this statement is at best evidence
that the contract is ambiguous.

            In summary, the parties have advanced
competing evidence and interpretations of that evidence regarding whether the
parties’ original agreement was for the Givenses to reserve the minerals in the
subject property.  Thus, genuine issues of material fact remain on this
question.

2.  Mistake

            The Givenses contend that any variance
between the deed and the parties’ original agreement was a mistake on their
part of which the Wards had knowledge.  The Wards respond that sustaining the
Givenses’ contention “would create an undue burden on all vendees of real
estate.  It would require the purchaser, after the fact, to ask the seller if
the contract the seller signed  .  .  .  was really what the seller intended to
sell.”  We disagree.

            Under the case law already cited, a
“[u]nilateral mistake by one party, and knowledge of that mistake by the other
party, is equivalent to mutual mistake.”  Davis, 750 S.W.2d at 768; accord
 Navasota Res., 249 S.W.3d at 539; Atlantic Lloyds Ins., 137 S.W.3d at
213.  This is not some novel legal theory.  It has been recognized for decades
by various courts and by respected commentators.  See, e.g., Restatement (Second) of Contracts § 155
cmt. b, § 166 cmt. a (1981); Restatement
of Contracts § 505 (1932); 27 Samuel
Williston & Richard A. Lord, A Treatise on the Law of Contracts § 70:105
(4th ed. 2003); 3 Samuel Williston, A
Treatise on the Law of Contracts § 1497.  Our research has disclosed six
 Texas cases applying this principle to the reformation of a deed and three
others to reformation of other instruments affecting an interest in real
property.  See Davis, 750 S.W.2d at 767-68; Hill, 973 S.W.2d at
775; Escamilla v. Estate of Escamilla, 921 S.W.2d 723, 725-26 (Tex. App.—Corpus Christi 1996, writ denied); Hamberlin, 770 S.W.2d at 13-14; Spellman
v. Am. Universal Inv. Co., 687 S.W.2d 27, 31 (Tex. App.—Corpus Christi 1984,
writ ref’d n.r.e.); Warren v. Osborne, 154 S.W.2d 944, 946-47 (Tex. Civ.
App.—Texarkana 1941, writ ref’d w.o.m.); see also Parker v. HNG Oil Co.,
732 S.W.2d 754, 755-56 (Tex. App.—Corpus Christi 1987, no writ) (release of
mineral lease); Ace Drug Marts, Inc. v. Sterling, 502 S.W.2d 935, 939-40
(Tex. Civ. App.—Corpus Christi 1973, writ ref’d n.r.e.) (lease); Coker v.
Hughes, 307 S.W.2d 354, 359-60 (Tex. Civ. App.—Amarillo 1957, no writ)
(lease).  Our research has also disclosed eleven Texas decisions either
applying this principle to the reformation of other contracts or recognizing
the validity of the principle.[6] 
Therefore, we do not agree that application of this established principle to
the Givenses’ reformation claim will turn real estate law on its head or “create
an undue burden on all vendees of real estate” as the Wards claim.

            Here, Kraus provided deposition
testimony that she read the deed before signing it and noticed that it stated
that there were no reservations.  According to her, they “were told” that the
mineral reservation “would be under encumbrances.”  A review of the deed
confirms that the mineral rights at issue are identified in Exhibit “B” to the
deed under the heading “Encumbrances” which are also referenced in the
“Exceptions to Conveyance and Warranty” clause[7] of
the deed.  Item 5(b) of the “Encumbrances” exhibit states, “All oil, gas and
other minerals, the royalties, bonuses, rentals and all other rights in
connection with the same are excepted herefrom as set forth in instrument
recorded in Volume 415, Page 368 of the Deed Records of Johnson County,
Texas.”  Kraus testified that an Alamo representative told them that this
provision “reserved the minerals.”  Thus, there is summary-judgment evidence
that the Givenses believed that the deed reserved their mineral interests.

            From the perspective of the Wards,
they were on notice that the deed contained no mineral reservation whenever
they received their copy.[8] 
Dianna conceded in her deposition testimony that, after the closing, she “maybe
in a hypothetical sense” posted a message on the website of the National
Association of Royalty Owners to the effect that she “thought that [she] had
not purchased the minerals and evidently there was some—something wrong with
the deed.”  In addition, Alamo notified the Wards’ attorney by letter dated
June 29, 2005 that the deed contained no mineral reservation and by letter to
counsel dated July 19 asked that the Wards execute a correction deed to include
the omitted mineral reservation.  Although Dianna testified that she does not
recall ever seeing the first letter, she “thinks” she remembers getting a
letter asking them to sign a correction deed.

            There is no summary-judgment evidence which
establishes whether the Wards realized at the closing that the deed contained
no mineral reservation.  Nevertheless, reformation of a deed has been awarded
even when neither party realized on the date of conveyance that there was a
mistake in the deed.  See Hatch, 110 S.W.3d at 520;[9]
see also Lathem v. Richey, 772 S.W.2d 249, 253 (Tex. App.—Dallas 1989,
writ denied) (“The presumption that a grantor has immediate knowledge of a
mistake in a deed is, however, rebuttable.”); accord Sullivan v. Barnett,
471 S.W.2d 39, 45 (Tex. 1971) (statute of limitations begins to run on claim
for reformation of deed “when the mutual mistake was, or in the exercise of
reasonable diligence should have been, discovered”); Cullins v. Foster,
171 S.W.3d 521, 531 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (same).

            Accordingly, the parties have advanced
competing evidence and interpretations of that evidence regarding whether the
deed varies from the parties’ original agreement with regard to a reservation
of minerals and whether this was due to a mistake on the part of the Givenses
of which the Wards had (or acquired) knowledge.  Thus, genuine issues of
material fact remain on the question of whether the deed varies from the
parties’ original agreement because of a mutual mistake.

3.  Summary

            Because genuine issues of material
fact remain on the meaning of the parties’ original agreement and on whether
the deed varies from that agreement because of a mutual mistake, the Wards
failed to conclusively establish their entitlement to judgment on their claim
that they are entitled to a judicial declaration that they own the minerals at
issue because the deed is “not a product of a mutual mistake.”  Therefore, we
sustain the Givenses’ fourth issue and Sewell’s fourth issue.

The Compliance Agreement

            Sewell contends in his second issue
and Alamo contends in its second issue that the court erred by denying their
joint summary-judgment motion because the evidence conclusively establishes
that the Wards breached the compliance agreement by refusing to sign the
correction deed.

            The compliance provision of the
parties’ “Acceptance of Title and Closing Agreements” reads as follows:

The undersigned agree to comply with all
provisions of the real estate contract, Lenders [sic] closing instructions, or
other documents executed in connection with the closing of this transaction. 
The undersigned further agree to fully cooperate, adjust, and correct any
errors or omissions and to execute any and all documents needed or necessary to
comply with all provisions of the above mentioned real estate contract,
Lender’s closing instructions or other documents executed in connection with
the closing of this transaction, including the payment of attorney’s fees
incurred in enforcing the terms of this compliance agreement.

 

            Sewell and Alamo contend that the
Wards have breached this agreement because they have refused to sign a
correction deed with the mineral reservation allegedly required by the real
estate contract.  However, we have already determined that genuine issues of
material fact remain on the question of whether the real estate contract
included a reservation of minerals.  The issue of whether the Wards have
breached the compliance agreement cannot be resolved until it is determined
whether the real estate contract included a reservation of minerals. 
Accordingly, the evidence does not conclusively establish that the Wards
breached the compliance agreement.  Therefore, we overrule Sewell’s second
issue and Alamo’s second issue.

Abatement

            Sewell contends in his fifth issue
that the court abused its discretion by denying the joint plea in abatement he
filed with Alamo.  They asked the court to abate the dispute between the
Givenses and the Wards pending the resolution of their claims for specific
performance of the compliance agreement.  They further contended that “[i]t
would be impractical for either [the Wards’] or [the Givenses’] Motions for
Summary Judgment to be granted prior to this Court’s ruling on Intervenors’
request for [specific performance].”

            We will assume without deciding that
abatement may be appropriate in some circumstances for claims pending in the
same lawsuit.  “The obvious reasons for abatement  .  .  .  are the
conservation of judicial resources, avoidance of delay, ‘comity, convenience,
and the necessity for an orderly procedure in the trial of contested issues.’” 
Perry v. Del Rio, 66 S.W.3d 239, 252 (Tex. 2001) (quoting Wyatt v.
Shaw Plumbing Co., 760 S.W.2d 245, 248 (Tex. 1988)) (footnotes omitted); accord
Mission Res., Inc. v. Garza Energy Trust, 166 S.W.3d 301, 326 (Tex.
App.—Corpus Christi 2005, no pet.).

            As we have explained, however, the
issue of whether the Wards have breached the compliance agreement cannot be
resolved until the dispute between the Wards and the Givenses has been
resolved.  For this reason, “the necessity for an orderly procedure” of the
contested issues requires that the dispute between the Wards and the Givenses
be first resolved.  Accordingly, the court did not abuse its discretion by
denying the plea in abatement.  Thus, we overrule Sewell’s fifth issue.

Conclusion

The parties’ respective claims hinge primarily on
the meaning to be given the real estate contract.  Genuine issues of material
fact remain on the question of whether that contract includes a reservation of
minerals.  Therefore, summary judgment was not proper on any of the parties’
claims.  Because of our disposition of the issues discussed, we need not
address any of the remaining issues.  See Tex. R. App. P. 47.1.  We reverse the judgment and remand
this cause to the trial court for further proceedings consistent with this
opinion.  See Sarandos, 25 S.W.3d at 814.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurring in part with note)*

Reversed and remanded

Opinion delivered and
filed October 8, 2008

[CV06]

 

*           (“Chief
Justice Gray concurs, in part, with the judgment.  A separate opinion will not
issue.  He notes, however, the deed is unambiguous and the Wards are entitled
to that portion of the trial court’s declaratory judgment.  While I do not join
the basis or reasoning as expressed in the Court’s opinion, I agree there are
unresolved fact issues that prevent the affirmance of the judgment and require
that it be remanded for further proceedings.”)









[1]
              This handwritten reference to
the oil and gas lease was inserted into the sales contract by the Givenses’
real estate agent.  The Givenses and the Wards initialed paragraph 2(F).





[2]
              Although the title of the
Wards’ summary-judgment response is vague, the prayer for relief indicates that
it was directed toward both the Givenses’ summary-judgment motion and Alamo’s and Sewell’s joint motion.





[3]
              In Cambridge Companies,
the Texarkana Court of Civil Appeals cited its 1941 decision in Warren v.
Osborne, which in turn quoted a 10th Circuit decision, which in turn quoted
Williston’s treatise on contracts.  Cambridge Cos. v. Williams, 602
S.W.2d 306, 308 (Tex. Civ. App.—Texarkana 1980) (quoting Warren v. Osborne,
154 S.W.2d 944, 946 (Tex. Civ. App.—Texarkana 1941, writ ref’d w.o.m.) (quoting
Columbian Nat’l Life Ins. Co. v. Black, 35 F.2d 571, 574 (10th Cir.
1929) (quoting 3 Samuel Williston, A
Treatise on the Law of Contracts § 1497))).  The current Williston
treatise continues to recognize this category of mutual mistake.  See 27
Samuel Williston & Richard A. Lord,
A Treatise on the Law of Contracts § 70:105 (4th ed. 2003).





[4]
              The Wards also contend that
other legal principles pose a bar to the Givenses’ reformation claim including
(1) the expressed-intention rule, (2) the greatest-estate-transferred rule, and
(3) the no-unilateral-mistake rule.  However, the first two are principles of
contract construction and have no bearing on a claim of mutual mistake.  See,
e.g., Frost Nat’l Bank v. L & F Distribs., Ltd., 165 S.W.3d 310, 311-12
(Tex. 2005) (per curiam) (“In construing a contract, we must ascertain and give
effect to the parties’ intentions as expressed in the document.”); Stewman
Ranch, Inc. v. Double M Ranch, Ltd., 192 S.W.3d 808, 811 (Tex.
App.—Eastland 2006, pet. denied) (“[C]ourts have held that deeds should be
construed to convey the greatest estate possible and that reservations should
be construed against the grantor.  These canons, however, do not apply when the
deed is unambiguous.”).  And because the Givenses allege mutual mistake, the
third principle does not apply.





[5]
              The Givenses stated in their
summary-judgment response that Dianna’s web postings “indicat[e] that [the
Wards] knew they weren’t buying the mineral rights but that such rights were
inadvertently conveyed by deed.”  The excerpts of Dianna’s deposition testimony
attached to the response also make numerous references to these postings, which
were apparently collectively identified at the deposition as “Exhibit Number
8.”  However, it does not appear that the Givenses attached this exhibit to
their summary-judgment response, so the contents of the web postings are not
part of the summary-judgment record.





[6]
              See Mullins v. Mullins,
889 S.W.2d 550, 552-53 (Tex. App.—Houston [14th Dist.] 1994, writ denied)
(indemnity agreement); Marcuz v. Marcuz, 857 S.W.2d 623, 627-28 (Tex.
App.—Houston [1st Dist.] 1993, no writ) (property settlement agreement); First
Nat’l Bank of Andrews v. Jones, 635 S.W.2d 950, 952-53 (Tex. App.—Eastland
1982, writ ref’d n.r.e.) (note); Cambridge Cos., 602 S.W.2d at 308-09 (note);
Automobile Ins. Co. of Hartford v. United Elec. Serv. Co., 275 S.W.2d
833, 839 (Tex. Civ. App.—Fort Worth 1955, writ ref’d n.r.e.) (insurance
policy); see also Navasota Res., L.P. v. First Source Tex., Inc., 249
S.W.3d 526, 539 (Tex. App.—Waco 2008, pet. filed); Gilbane Bldg. Co. v.
Keystone Structural Concrete, Ltd., No. 01-05-00988-CV, 2007 WL 2130373, at
*7 (Tex. App.—Houston [1st Dist.] July 26, 2007, no pet.); Atlantic Lloyds
Ins. Co. v. Butler, 137 S.W.3d 199, 213 (Tex. App.—Houston [1st Dist.]
2004, pet. denied); Seymour v. Am. Engine & Grinding Co., 956 S.W.2d
49, 58 (Tex. App.—Houston [14th Dist.] 1996, writ denied); Victoria Bank
& Trust Co. v. Brady, 779 S.W.2d 893, 903-04 (Tex. App.—Corpus Christi
1989), rev’d in part on other grounds, 811 S.W.2d 931 (Tex. 1991); Am.
Nat’l Ins. Co. v. Gifford-Hill & Co., 673 S.W.2d 915, 922 (Tex.
App.—Dallas 1984, writ ref’d n.r.e.).

 





[7]
              This clause reads as follows:

 

Exceptions to Conveyance and Warranty: This Deed
is executed by Grantor and accepted by Grantee subject to liens described as
part of the Consideration and any other liens described in this deed as being
either assumed by Grantee or subject to which title is taken by Grantee; all
validly existing and enforceable rights, interests, estates, restrictions, easements
and liability for standby fees and taxes in connection with those matters
described on Exhibit “B” attached to this Deed and incorporated by reference
(the “Encumbrances”).

 





[8]
              According to a notation on the
first page of the deed, the county clerk was to mail it to the Wards “after
recording.”  The deed was recorded on December 8, 2004, five days after it was
executed.

 





[9]
              In Hatch, the seller
did not discover the mistake for more than 3 years while the buyer discovered
the mistake within 3 days.  See Hatch v. Williams, 110 S.W.3d 516, 523
& n.3 (Tex. App.—Waco 2003, no pet.).